**Richard S. HENDERSON, Appellant,**

**v.**

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 95–310.**

United States Court of Veterans Appeals.

Nov. 10, 1998.

Richard S. Henderson, pro se.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Richard M. Mayerick, Washington, DC, were on the pleadings, for appellee.

Before HOLDAWAY, IVERS, and STEINBERG, Judges.

STEINBERG, Judge:

The pro se appellant, veteran Richard S. Henderson, appeals a September 22, 1994, decision of the Board of Veterans' Appeals (Board or BVA) denying his claims for Department of Veterans Affairs (VA) service connection for respiratory disorders, including chronic obstructive pulmonary disorder and asthma, for a cardiovascular disorder, including hypertension as secondary to a respiratory disorder or a psychiatric disorder, and for a psychiatric disorder, including post-traumatic stress disorder (PTSD); the Board also concluded that new and material evidence had not been presented or secured to reopen his previously disallowed claims for service connection for a right-foot disorder, for a knee disorder, and for a right-hand disorder; and the Board found that his claim for service connection for a right-shoulder disorder was not well grounded. Record (R.) at 11, 28. The Board also referred to a VA regional office (RO) a claim related to 38 U.S.C. § 1151 (1994) (providing benefits for persons injured or disabled as a result of VA treatment) and claims for service connection for basal cell carcinoma, blinding headaches, and a back disorder, and instructed the RO to inquire of the veteran whether he was seeking an increased rating for his service-connected prostatitis and hepatitis. R. at 9. Both parties have filed numerous pleadings related to several interlocutory issues and each party filed a brief and the appellant also filed a reply brief. For the reasons that follow, the Court will vacate the Board's decision in part and remand as to all matters on appeal.

## I. Procedural History

The appellant served on active duty in the U.S. Army from July 1945 to September 1948 and from October 1948 to August 1950, with additional periods of active duty for training in 1950 and 1952 to 1956. *See* R. at 9, 203, 205. In September 1957, he filed an application for VA service-connected disability compensation for, inter alia, an injury to his right foot, an injury to his right index finger, and for knee disorders. R. at 226–29. An April 1958 RO decision, inter alia, denied service connection for knee, right-index-finger, and right-foot disorders. R. at 250–52. That decision was apparently never appealed.

In April 1990, he filed a statement in support of claim in which he sought to have his "claim for service[-]connected disability re-opened due to worsening of [his] condition", stating also that he was treated for hypertension in service and that he was presently having heart problems. R. at 256. In June 1990, the RO denied service connection for hypertension and a heart condition. R. at 258–60. He filed a Notice of Disagreement (NOD) in July 1990. R. at 264.

In February 1991, he filed a statement in support of claim in which he identified numerous claims, including service connection for hepatitis, a back disability, feet and hand injuries, injuries to his ribs and knees, angina secondary to pulmonary disorder, sinusitis and rhinitis, PTSD, and hypertension. R. at 379–85. A March 1991 RO decision denied service connection for respiratory and nervous conditions. R. at 482–83. A May 1991 letter to the veteran from the RO noted that service connection for a right-foot condition, a right-hand condition, and a knee disability had been previously denied; the RO requested additional evidence. R. at 490. Later that month, the veteran filed a putative NOD as to the May 1991 "conclusions" (R. at 493), but the RO informed him that because he had not filed an NOD within one year after the 1958 decision denying those claims it could take no action absent new and material evidence (R. at 496). However, the RO apparently later accepted the May 1991 "NOD" as putting into appellate status the questions whether the veteran had submitted new and material evidence on the foot, hand, and knee conditions. *See* R. at 507–12 (Statement of the Case).

A February 1992 Board decision remanded for further development the issues of service connection for a heart condition and hypertension claimed as secondary to a pulmonary condition and/or a nervous condition, instructed the RO to determine whether an appeal of the denial of the foot, knee, and hand claims had been perfected and whether the veteran wished to pursue any other of the issues identified in his various pleadings. R. at 582–85. In an April 1992 letter to the

RO, the veteran specified that he wished to appeal "each and every matter or claim made". R. at 588. On remand, an October 1992 RO decision continued the denial of service connection for a heart disorder, hypertension, a pulmonary disorder, and a psychiatric disorder; it also denied service connection for a rib injury, vertigo, and right-arm and right-shoulder conditions. R. at 606–08. In a November 1992 statement, the veteran disagreed with all denials. R. at 612. He also raised the issue of malpractice by a VA facility. R. at 613. In December 1992, he informed the RO that he had been diagnosed with a deviated septum, stated that he had boxed in service, which, he argued, had led to his deviated septum, which had in turn led to sinusitis, which had in turn led to his respiratory disorder. R. at 663.

In January 1993, the veteran submitted a statement from Dr. Vlahos stating that he had treated the veteran for 27 years for "acute pharyngitis, vasomotor rhinitis, sinusitis and otitis", that those conditions "ha[d] their origin and exacerbation while the patient was in the service", and that "Mr. Henderson developed *chronic obstructive pulmonary disorder* as an end result". R. at 697. In a February 1993 statement, the veteran noted, inter alia, that the RO had not addressed his malpractice claim. R. at 710. In another statement received by the RO in February 1993, he stated that the issues on appeal were: (1) a left-knee injury, (2) right-index finger, right-hand, and right-shoulder injuries, (3) hearing loss, (4) back pain, (5) chronic obstructive pulmonary disorder, (6) prostatitis, (7) a psychiatric disorder secondary to his pulmonary disorder and/or a PTSD claim, and (8) blinding headaches; further, he asserted that his respiratory disorder was caused by a failure of a VA medical examiner to warn him of nasal blockage detected in an examination. R. at 723, 726, 731. The veteran then filed a VA Form 9 (Substantive Appeal to the BVA). R. at 748–51; *see also* R. at 994–95; 1094.

In July 1993, the RO concluded, inter alia, that the April 1958 RO decision denying service connection for a back condition had not been the product of clear and unmistakable error (CUE). R. at 928. A December 1993 RO decision continued the denial of service connection for PTSD. R. at 1024–28.

In the September 22, 1994, BVA decision on appeal, the Board denied the veteran's claims for service connection for respiratory disorders, including chronic obstructive pulmonary disorder and asthma, for a cardiovascular disorder, including hypertension, and for a psychiatric disorder, including post-traumatic stress disorder (PTSD); the Board concluded that new and material evidence had not been presented or secured to reopen his claims for service connection for a right-foot disorder, for a knee disorder, and for a right-hand disorder; and the Board found that his claim for service connection for a right-shoulder disorder was not well grounded. Record (R.) at 11, 28. The Board also referred to the RO the claim related to 38 U.S.C. § 1151 and claims for service connection for basal cell carcinoma, blinding headaches, and a back disorder, and instructed the RO to inquire of the veteran whether he was seeking an increased rating for his service-connected prostatitis and hepatitis. R. at 9.

The appellant filed a Notice of Appeal (NOA) on April 6, 1995. In addition to the merits issues decided by the Board in its September 1994 decision, the appellant sought to appeal a March 22, 1995, decision by the Board Deputy Vice Chairman denying his October 1994 motion for reconsideration of that September 1994 Board decision; the appellant also raised a number of interlocutory issues, including that the record on appeal (record) was incomplete, that the Board Deputy Vice Chairman had no authority to deny his motion for reconsideration, and that the BVA decision on appeal was improperly rendered by a single Board member. In a May 30, 1997, order, the Court dismissed the appeal as to the BVA Deputy Vice Chairman's denial of the motion for reconsideration but sought additional briefing on the authority of the Deputy Vice Chairman to render that decision. *Henderson v. Brown,* 10 Vet.App. 272 (1997) (per curiam order) (*Henderson I*). In a March 4, 1998, order, the Court ordered that certain documents counter designated by the appellant be included in the record, held in abeyance its

consideration of the other two interlocutory issues, and instructed the parties to proceed to the merits. *Henderson v. West,* 11 Vet. App. · 111, 113 (1998) (per curiam order) (*Henderson II* ). On June 15, 1998, the Court dismissed as moot the appellant's appeal of the Board's denial of his respiratory-condition claim because service connection had been awarded by a subsequent RO decision. *Henderson v. West,* 11 Vet.App. 245, 247 (1998) (per curiam order) (*Henderson III* ). Briefing was completed on August 13, 1998.

The Secretary has moved to strike the appellant's arguments based on references to "materials" in the appellant's appeal of the BVA Deputy Vice Chairman's denial of his motion for reconsideration. Response at 1–2. In our May 30, 1997, order the Court dismissed the appellant's appeal of that denial. *Henderson I,* 10 Vet.App. at 278. Therefore, the Court here has not relied on those "materials" except as they pertain to the investigation of the authority to delegate the decision on a motion for BVA reconsideration.

## II. Analysis

Because the Court has held in abeyance the appellant's contentions regarding the effectiveness of the BVA Deputy Vice Chairman's denial of his motion for reconsideration and the appropriateness of a single-member Board decision in his case, the Court will first address those matters. For the reasons that follow, the Court concludes that the BVA Deputy Vice Chairman possessed authority to act upon the veteran's motion for BVA reconsideration and that the 1994 BVA decision on appeal was not invalid on the ground that it was rendered by a single member.

### A. Authority to Delegate Decision on Motion for BVA Reconsideration

On March 22, 1995, the BVA Deputy Vice Chairman denied an October 31, 1994, motion for BVA reconsideration of the September 22, 1994, BVA decision. That denial stated: "[T]he Board's decision of September 22, 1994, was consistent with the facts established by the evidence of record at that time. It was also consistent with the law in effect at that time." The denial further stated: "The reasons or bases for the determination

reached were clearly stated in the Board's decision. I find the rationale for the decision is completely reasonable and fully consistent with the evidence of record." The appellant contends, in sum, that the authority to rule upon motions for BVA reconsideration is committed by statute solely to the BVA Chairman; the appellant also contends that the decision's statement of reasons or bases was inadequate. For the reasons that follow, the Court disagrees.

*1. Jurisdiction to Decide Issue.* First we must decide whether we have jurisdiction to entertain the appellant's challenge on this point. *See Barnett v. Brown,* 83 F.3d 1380, 1383 (1996) (Court has obligation to satisfy itself as to its jurisdiction before adjudicating merits); *Marsh v. West,* 11 Vet.App. 468, 469 (1998); *Heath v. West,* 11 Vet.App. 400, 402 (1998); *Aronson v. Brown,* 7 Vet.App. 153, 155 (1994). As to this issue, the appellant contends that the Court has no jurisdiction over his appeal because of the asserted defect in the BVA decisionmaking process. His reasoning is that if the BVA Chairman's delegation to the Deputy Vice Chairmen to decide motions for BVA reconsideration is held invalid by this Court, then his October 1994 motion for reconsideration of the Board's September 1994 decision is still pending before the Board, and, under *Rosler v. Derwinski,* 1 Vet.App. 241, 249 (1991), the Court would have to dismiss the appeal. Appellant's April 18, 1996, Motion at 4; March 31, 1997, Reply at 1. We held in *Rosler* that a motion for BVA reconsideration abates the finality of the BVA decision of which reconsideration is sought and thus deprives this Court of jurisdiction over any attempt to appeal the underlying, no-longer-final BVA decision. *Rosler,* 1 Vet.App. at 249; *see also Linville v. West,* 11 Vet.App. 60, 62 (1998) (en banc). Hence, we agree with the appellant that if his argument were to succeed, his April 6, 1995, NOA would be invalid and we would have no jurisdiction over his appeal as to the Board's September 1994 decision. *See ibid.* Because the Court has jurisdiction to decide whether it has jurisdiction over the appellant's appeal of the underlying September 22, 1994, decision, *see Smith (Irma) v. Brown,* 10 Vet.App. 330, 332 (1997); *Phillips*

*(Ronnie) v. Brown,* 10 Vet.App. 25, 30 (1997), we conclude that we have jurisdiction to, and indeed must, decide the appellant's challenge to the validity of the Deputy Vice Chairman's March 22, 1995, denial of the appellant's October 1994 motion for BVA reconsideration of that September 1994 BVA decision before we can proceed to review that underlying BVA decision itself.

■ *2. The Appellant's Contention as to the Court's Lack of Jurisdiction Over his Appeal.* As we have concluded, if the appellant is correct that his October 1994 motion for reconsideration is still pending before the Board, then his April 1995 NOA is invalid, and we have no jurisdiction to review his contentions as to the September 1994 Board decision. Section 7103 of title 38, United States Code, provides:

(a) The decision of the Board determining a matter under section 7102 of this title is final unless the Chairman orders reconsideration of the decision in accordance with subsection (b). Such an order may be made on the Chairman's initiative or upon motion of the claimant.

(b)(1) Upon the order of the Chairman for reconsideration of the decision in a case, the case shall be referred—

(A) in the case of a matter originally heard by a single member of the Board, to a panel of not less than three members of the Board; or

(B) in the case of a matter originally heard by a panel of members of the Board, to an enlarged panel of the Board.

(2) A panel referred to in paragraph (1) may not include the member, or any member of the panel, that made the decision subject to reconsideration.

(3) A panel reconsidering a case under this subsection shall render its decision after reviewing the entire record before the Board. The decision of the panel shall be made by a majority vote of the members of the panel. The decision of the panel shall constitute the final decision of the Board.

(c) The Board on its own motion may correct an obvious error in the record, without regard to whether there has been a motion or order for reconsideration.

38 U.S.C. § 7103(a), (b), (c). Section 512(a) of title 38, United States Code, provides:

Except as otherwise provided by law, *the Secretary* may assign functions and duties, and *delegate,* or authorize successive redelegation of, *authority* to act and *to render decisions, with respect to all laws administered by the Department,* to such officers and employees as the Secretary may find necessary. Within the limitations of such delegations, redelegations, or assignments, all official acts and decisions of such officers and employees shall have the same force and effect as though performed or rendered by the Secretary.

38 U.S.C. § 512(a) (emphasis added). This law provides broad authority for the Secretary to delegate authority, extending to power to delegate "authority to . . . render decisions, with respect to *all* laws administered by the Department". *Ibid* (emphasis added). The Court finds no indication that 38 U.S.C. § 7103 is an exclusive grant of authority by Congress to the BVA Chairman to reconsider BVA decisions. *See, e.g.,* 38 U.S.C. § 7103(c) ("Board on its own motion may correct an obvious error in the record"); 38 U.S.C. § 7101(b)(4) ("Secretary shall designate one member of the Board as Vice Chairman [and] . . . Vice Chairman shall perform such functions as the Chairman may specify."); *see also* 38 U.S.C. § 503 (Secretary's authority to order equitable relief even where decision is otherwise final under 38 U.S.C. § 7104(b) and BVA Chairman has not ordered reconsideration under section 7103). Moreover, the Court can find nothing in the broad language of section 512(a)—or otherwise in title 38—that limits the Secretary's broad delegation authority to those powers expressly granted to him; that section specifically states "[e]xcept as otherwise provided by law, the Secretary may . . . delegate . . . authority to act or render decisions, *with respect to all laws administered by the Department* " (emphasis added); *see also* 38 U.S.C. § 501(a) ("Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and

are consistent with those laws"); *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 121–22, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947) ( holding that broad grant of rulemaking power "may itself be an adequate source of authority to delegate a particular function, unless by express provision of the Act or by implication it has been withheld").

Because the Court has thus concluded that the Secretary possessed authority to delegate the BVA Chairman's reconsideration authority, the only question remaining as to the threshold arguments discussed in this part is whether that delegation authority had been exercised at the time that the BVA Deputy Vice Chairman rendered his decision in March 1995. The Court concludes that it had. Then existing regulations specifically provided that the Vice Chairman and the Deputy Vice Chairmen could exercise the Chairman's reconsideration authority under 38 C.F.R. § 20.1001(c) (1994):

> (b) The authority exercised by the Chairman of the Board of Veteran's Appeals described in Rules 608(b), 717(d), and 1001(c) (§§ 20.608(b), 20.717(d), and 20.1001(c) of this part) may also be exercised by the Vice Chairman of the Board and by the Deputy Vice Chairmen of the Board.

38 C.F.R. § 20.102 (1993). The present version of § 20.102(b) is the same. Thus, section 512(a) gave the Secretary authority to delegate the Chairman's reconsideration authority, the Secretary did so in § 20.102(b), and the Deputy Vice Chairman had authority to rule upon the veteran's motion for BVA reconsideration.

The appellant's reliance upon the Appointments Clause, U.S. Const. art. II, § 2, cl. 2 ("Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments"), is inapposite. Although the Court agrees that Board members and the Vice Chairman are "inferior officers" of the United states who must be appointed in accordance with the appointments clause, *see Buckley v. Valeo*, 424 U.S. 1, 126, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ("any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by § 2, cl. 2"), the appellant apparently believes that it is the BVA Chairman—demonstrably not the President, a head of department, or a court of law—who has appointed the Vice Chairman to review motions for BVA reconsideration. However, it is the Secretary, a "Head[ ] of Department[ ]" who appoints Board members (under section 7101A(a)), who "designate[s] one member of the Board as Vice Chairman" (under 7101(b)(4)), and who has delegated reconsideration authority to the BVA Vice Chairman and Deputy Vice Chairmen (under 38 C.F.R. § 20.102(b)). *See Freytag v. Comm'r*, 501 U.S. 868, 878, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) ("Constitution limits congressional discretion to vest power to appoint 'inferior Officers' to three sources: 'the President alone,' 'the Heads of Departments,' and 'the Courts of Law' ").

Accordingly, the Court concludes that it has jurisdiction over the appeal to the Court as to the October 1994 BVA decision because the veteran's September 1994 motion for BVA reconsideration was lawfully disposed of by the BVA Deputy Vice Chairman and hence is no longer pending at the Board.

Finally, although the Court, in its May 30, 1997, order, has already denied review of the BVA Vice Chairman's denial of reconsideration, the Court notes, in response to the appellant's contentions, that it finds no infirmity in the "reasons or bases" articulated by the Deputy Vice Chairman in his denial of the veteran's motion for BVA reconsideration. Assuming, without deciding, that such a reasons-or-bases obligation attaches, *see* 38 U.S.C. § 7104(d) ("[e]ach ***decision of the Board*** shall include ... a statement of the Board's findings and conclusion, and the reasons or bases for those findings and conclusions" (emphasis added)); *Mayer v. Brown*, 37 F.3d 618, 620 (Fed.Cir.1994) ("action by the Chairman is not a decision of the board"), the statement in the denial—which incorporates the Board's statement by reference—suffices. *See Crowe v. Brown*, 7 Vet.App. 238, 244 (1994) (Board's statement of reasons or bases "must be ***adequate*** to enable a claimant to understand the precise basis for

the Board's decision, as well as to facilitate review in this Court") (emphasis added); *Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Masors v. Derwinski*, 2 Vet.App. 181, 188 (1992); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990).

### B. Authority for Single–Member BVA Decision

We thus move to review of the September 1994 BVA decision appealed here. As a threshold matter, the appellant contends that, because the February 1992 BVA decision remanding his claims for additional development was made by a three-judge panel of the Board, the rendering of the September 1994 decision by a single member of the Board was invalid because it gave impermissible retroactive effect to section 6(a) of the Board of Veterans' Appeals Administrative Procedures Improvement Act of 1994, Pub.L. No. 103–271, § 6(a), 108 Stat. 740, 741 (1994) (amending 38 U.S.C. § 7102(a) and providing, inter alia, that proceeding before Board may be assigned to single member). That law was effective on its date of enactment, July 1, 1994. *Henderson I*, 10 Vet.App. at 275.

The veteran's appeal to the Board was pending when Pub.L. No. 103–271 was enacted. As the Court noted in our May 30, 1997, order in this case, *Henderson I, supra*, "[a]s to cases pending at the time a new law becomes effective, the Supreme Court has held that before applying such a statute courts must determine whether the statute would 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed'". *Henderson I, supra* (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)); *see also Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 1877–78, 138 L.Ed.2d 135 (1997) (applying *Landgraf* factors to find that statute that creates new cause of action would have prohibited retroactive effect if applied to transaction completed before that law's enactment); *SEC v. Fehn*, 97 F.3d 1276, 1284–87 (9th Cir.1996) (applying Private Securities Litigation Reform Act of 1995, passed two months after oral argument in appeal, to case pending at bar, because although statute was silent as to effective date it would not "'attach new legal consequences'" to the underlying events (citing *Landgraf, supra*)); *Scheidemann v. INS*, 83 F.3d 1517, 1520–23 (3d Cir.1996) (although intent of Congress was clear as to effect of statute, court applied *Landgraf* analysis to determine that law that added statutory bar to alien's eligibility to seek discretionary waiver of deportation, and new legal definition of "aggravated felony", both passed after alien's conviction, had to be applied to case pending at bar because neither had *Landgraf* retroactive effect); *Colyer v. Harris*, 519 F.Supp. 692, 696–701 (S.D.Ohio 1981) (court applied to pending case new Social Security Administration regulations on basis that retrospective application would not cause "manifest injustice", explaining that such application may be made "only to the extent that [new laws or regulations] do not produce a result contrary to that which would have been achieved under prior law, or [if producing a result contrary to the result achieved under prior law] may be applied only if the use of the regulations benefits the claimant"). The factors to be considered in determining whether a change in statutory law are to be applied to a pending appeal differ from those governing the application of new judicial interpretations. *See Brewer v. West*, 11 Vet.App. 228, 233 (1998) (court will apply new caselaw to all pending appeals).

On its face, Public Law 103–271 does not increase a party's liability or impose new duties; thus, the only reason not to apply that law to the pending case would be if it "impair[ed a] right[ ] [that the] party possessed when he acted", *Landgraf, supra*. In our May 30, 1997 order in this case, the Court noted: "It seems well established that 'because rules of procedure govern secondary conduct rather than primary conduct, applying them to cases pending on their effective date does not violate presumptions against retroactivity' and that such new rules are applied 'even where they work to the disadvantage of defendants in pending cases'". *Henderson I*, 10 Vet.App. at 275 (quoting *Adepegba v. Hammons*, 103 F.3d 383, 386 (5th Cir.1996)). However, we specifically left

open—pending additional briefing—the question whether section 6(a) of Public Law 103–271 affected a procedural or substantive right. *Henderson I, supra.* The Court now concludes that section 6(a) of Public Law 103–271 affected only a procedural right, and thus there was no error in the Board's having rendered—in reliance on that law—a single-member decision in September 1994. *See Hughes,* 117 S.Ct. at 1878 ("[s]tatutes merely addressing *which* court shall have jurisdiction to entertain a particular cause of action can fairly be said merely to regulate the secondary conduct of litigation and not the underlying primary conduct of the parties ... [; s]uch statutes affect only *where* a suit may be brought, not *whether* it may be brought at all") (emphasis added); *see also Legal Assistance for Vietnamese Asylum Seekers v. Dept. of State,* 104 F.3d 1349, 1352 (D.C.Cir.1997) (applying *Landgraf* and finding no "retroactivity" concerns for procedural rights claims); *cf. Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997) (Supreme Court applied habeas corpus amendment that had substantive as well as procedural effects only to cases filed after statute's enactment; reaffirmed, citing *Landgraf, supra,* that as to law that was "merely procedural in a strict sense ..., the material expectation would be that it would apply to pending cases"). Thus, applying section 7102 to the veteran's appeal and permitting a single-member decision does not have an impermissible retroactive effect because it affects only a procedural right as to the constitution of the tribunal, rather than a substantive right involving, for instance, whether a claim can be brought at all.

As an additional matter, the Court notes that in *Karnas v. Derwinski,* this Court ruled that "where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should and we so hold will apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so". *Karnas,* 1 Vet.App. 308, 313 (1991). We find that *Karnas* is inapplicable here because the change enacted in section 7102 is *neutral;* that is, there is no way to

determine whether a decision by one member, as opposed to three, is more or less favorable to the veteran; indeed, a decision by a single member who was favorably inclined toward the claim would be more favorable than a decision by a three-member panel that included two members unfavorably inclined.

Accordingly, the Court concludes that the fact that the September 1994 BVA decision was rendered by a single Board member does not render it invalid. Having concluded that neither the disposition of the motion for reconsideration nor the Board decision itself here on appeal presents an impediment to the Court's reaching the merits, we now proceed to the merits.

### C. Merits Issues

The Board decision on appeal denied the veteran's claims for service connection for a respiratory disorder, for a cardiovascular disorder, and for a psychiatric disorder; the Board concluded that new and material evidence had not been presented or secured to reopen his claims for service connection for a right-foot disorder, for a knee disorder, and for a right-hand disorder; and the Board found that his claim for service connection for a right-shoulder disorder was not well grounded. Record (R.) at 11, 28.

**1. Matters Not on Appeal.** The Court has previously dismissed the respiratory-disorder claim. *Henderson III,* 11 Vet.App. at 247. The appellant's primary brief does not address his right-shoulder or right-foot claim, and the Court will therefore consider those claims to have been abandoned on appeal. *See Degmetich v. Brown,* 8 Vet.App. 208, 209 (1995), *aff'd,* 104 F.3d 1328 (Fed.Cir. 1997); *Bucklinger v. Brown,* 5 Vet.App. 435, 436 (1993). The Court notes that the Secretary's brief (Response at 7) erroneously states that the appellant had not addressed in his principal brief his claims to reopen as to the knee and hand-disorder claims. Hence, those claims have not been abandoned on appeal. As to the foot claim, although the appellant's reply brief insists that "there has been no abandonment of any issues" (Reply at 1) and specifically addresses the foot claim, such argument cannot be

raised for the first time in the appellant's reply brief, and that claim will thus be considered abandoned on appeal. *See Carbino v. Gober,* 10 Vet.App. 507, 511 (1997) ("[R]ule 28(a)(3) of the Court's Rules of Practice and Procedure ... requires a statement of the issues in the appellant's brief"). Additionally, as to other matters that were raised in the appellant's brief—including a back disorder, a claim under section 1151, sinusitis, effective date, and ratings of conditions as yet not found to be service connected—the Court lacks jurisdiction over those issues because there is no jurisdiction-conferring NOD. *See* Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); *Hamilton v. Brown,* 4 Vet.App. 528, 531–32 (1993) (en banc), *aff'd,* 39 F.3d 1574, 1583–85 (Fed.Cir.1994).

*2. Matters on Appeal.* The Court therefore concludes that the following five matters are properly before it: Service connection for a psychiatric condition and for a cardiovascular disorder; whether new and material evidence has been presented or secured to reopen the previously disallowed claims for service connection for a knee and a right-hand disorder; and CUE claims in connection with disallowed claims for service connection for hepatitis. The Court will address each in turn.

■ *a. Psychiatric condition:* The Secretary concedes that the Court should remand the appellant's claim for service connection for a psychiatric disorder, including PTSD, because the Board failed to provide an adequate statement of reasons or bases for rejecting the results of a November 1992 "assessment stemming from incidents he was involved in during WW II" that diagnosed PTSD. R. at 884. The Court agrees. *See* 38 U.S.C. § 7104(d)(1); *Simon,* 2 Vet.App. at 622; *Masors,* 2 Vet.App. at 188; *Gilbert,* 1 Vet.App. at 57. Here, the veteran's PTSD claim is well grounded because there is a diagnosis of current PTSD, the assertion of an in-service stressor, and medical evidence of a nexus between the veteran's PTSD symptomatology and his service. R. at 884; *see Cohen (Douglas) v. Brown,* 10 Vet.App. 128, 137 (1997) (establishing criteria for well-grounded PTSD claim). To comply with the reasons-or-bases requirement of 38 U.S.C. § 7104(d)(1), the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Abernathy v. Principi,* 3 Vet. App. 461, 465 (1992); *Gilbert, supra.*

■ The Court will thus vacate the Board's decision as to that matter and remand it for readjudication. The Court further notes, as did the Secretary in his brief, that on October 8, 1996, while this appeal was pending here, VA issued a final rule amending that portion of its Schedule for Rating Disabilities pertaining to mental disorders. 61 Fed.Reg. 52,695 (1996) (to be codified at 38 C.F.R. pt. 4); *Cohen (Douglas),* 10 Vet.App. at 138–39. The veteran is entitled to have his case adjudicated under whichever regulatory provision would be more favorable to him in light of a regulatory change (not specifically made prospective only) while his case is on appeal to the BVA and this Court. *See Karnas, supra.* Additionally, the Court notes, as did the Secretary, that the fulfillment of the statutory duty to assist in the development of a well-grounded claim requires a thorough and contemporaneous medical examination. *See* 38 U.S.C. § 5107(a); *Suttmann v. Brown,* 5 Vet. App. 127, 138 (1993); *Green (Victor) v. Derwinski,* 1 Vet.App. 121, 124 (1991). In light of VA's duty to assist in connection with a well-grounded claim, the Board's failure to address properly the medical evidence that occasions this remand and the length of time since the last examination, on remand the duty to assist requires that VA provide the veteran with an examination to address the etiology of his PTSD. *See* 38 C.F.R. § 4.2 (1997) ("[i]f a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes"); *see also* 38 C.F.R. § 19.9

(1997) (Board to remand for further development where "further evidence or clarification of the evidence ... is essential for a proper appellate decision"); *Obert v. Brown*, 5 Vet. App. 30, 33 (1993) ("presentation of well-grounded claim triggers a necessity to seek *medical evidence* either to verify or not verify the claim"). Finally, the Court notes—again as does the Secretary—that the Board's analysis of the veteran's PTSD claim failed to address the question whether the veteran was engaged in combat with the enemy; a finding that the veteran was so engaged would lighten the evidentiary burden he bears in showing entitlement to service connection for PTSD. *See Gaines v. West*, 11 Vet.App. 353, 358 (1998) ("determination as to whether a veteran was engaged in combat with the enemy is particularly significant in PTSD cases").

■ *b. Cardiovascular claim:* The veteran's claim for service connection for a heart condition, including hypertension, is based on a theory of secondary service connection derived from either the veteran's respiratory disorders or an asserted psychiatric disorder. Because the RO has now awarded service connection for the veteran's respiratory condition, his claim for secondary service connection for a psychiatric disorder derived from the now service-connected respiratory condition will be remanded to the Board for readjudication in light of the RO's decision. As to the appellant's claim for secondary service connection of his heart condition, as derived from a psychiatric condition, the Secretary contends that the claim for service connection for a cardiovascular disorder should be remanded because new diagnostic criteria pertaining to the cardiovascular system were adopted during the pendency of the appeal. *See* 62 Fed.Reg. 65207 (1997); *Karnas, supra.* However, the Board concluded that there was "no medical evidence relating any heart disease or hypertension to service or to his service-connected disabilities" and "no evidence of cardiovascular disorder in service, or within one year after separation therefrom". R. at 24. The Board also concluded that, because it had denied service connection for a psychiatric disorder, service connection for a cardiovascular condition claimed as secondary to a psychiatric disorder was not warranted. R. at 24–25. The Court need not decide whether remand is appropriate here—in a case where the veteran appears to lack medical evidence of nexus to service—to address the new cardiovascular diagnostic criteria because in the instant matter the veteran's claim for service connection for a cardiovascular disorder is inextricably intertwined with his claim for service connection for a psychiatric disorder, which the Court has, in part II.C.2.a., above, now decided to remand. In *Harris v. Derwinski*, the Court held that where the BVA referred to an RO a heart-disorder claim that was "inextricably intertwined" with a claim for an increased rating for anxiety neurosis, the Board's decision on the anxiety-neurosis claim was not final. *Harris v. Derwinski*, 1 Vet.App. 180, 183 (1991). The Court explained that where a decision on one issue would have a "significant impact" upon another, and that impact in turn "could render any review by this Court of the decision [on the other claim] meaningless and a waste of judicial resources", the two claims are inextricably intertwined. *Harris, supra; see also Bagwell v. Brown*, 9 Vet.App. 337, 339–40 (1996) (remanding claim for increased rating because, inter alia, inextricably intertwined with remanded extra-scheduler rating claim); *Nacoste v. Brown*, 6 Vet.App. 439, 441 (1994); *Hoyer v. Derwinski*, 1 Vet.App. 208, 210 (1991). The Court will thus vacate the Board's decision as to the cardiovascular condition as secondary to the psychiatric disorder as to which the veteran's claim is being remanded and will remand the cardiovascular matter.

*c. Knee and hand claims:* In this case, the Board found that there was no new and material evidence to reopen the previously disallowed knee and hand claims, citing *Colvin v. Derwinski*, 1 Vet.App. 171 (1991). R. at 19–21. Specifically, it found that "the evidence is not material, as it is not relevant and probative of the issue at hand". R. at 20. Those words come from *Colvin*, which the U.S. Court of Appeals for the Federal Circuit has overruled, as to its definition of "material evidence", in *Hodge v. West*, 155 F.3d 1356, 1362 (Fed.Cir.1998). The Federal

Circuit concluded that VA's regulation, 38 C.F.R. § 3.156(a) (1997), was a reasonable interpretation of 38 U.S.C. § 5108 (requiring disallowed claims to be reopened upon the presentment or securing of new and material evidence) and must govern decisions on whether to reopen previously disallowed claims. *Hodge, supra.* Accordingly, the question of whether there was new and material evidence to reopen as to these two previously disallowed claims will be remanded to the Board to be readjudicated in accordance with 38 C.F.R. § 3.156(a) and *Hodge.*

*d. CUE claims:* The veteran claimed CUE in a 1949 RO decision denying his claim for service connection for hepatitis. R. at 620–21. He filed a timely Notice of Disagreement (NOD) (R. at 783) on March 4, 1993, as to the RO's December 8, 1992, and February 4, 1993, decisions rejecting both the CUE claim on the 1949 RO decision and, sua sponte, any CUE claim on a 1958 RO decision; he also filed a substantive appeal on June 21, 1993. R. at 907. The veteran also claimed CUE in the 1958 RO decision's denial of his claim for service connection for a back disorder. He filed a timely NOD on December 19, 1993 (R. at 1079), to the July 14, 1993, RO decision denying that claim (R. at 928–29). These three CUE claims were thus placed in appellate status and were not abandoned by the veteran in his appeal to the Board. Indeed, in a June 1993 substantive appeal (VA Form 9) to the BVA, he expressly reiterated those claims. R. at 908. Hence, he had a right to a BVA decision as to those CUE claims, and the BVA ignored them in its September 1994 decision. *See Archbold v. Brown,* 9 Vet.App. 124, 133 (1996) (Court remands for Board review CUE claim that Board had failed to adjudicate when Board "had before it a fully perfected appeal on the CUE issue"). The Court has jurisdiction as to this matter by virtue of the post-November 17, 1988, NODs, *see* VJRA § 402; *Hamilton, supra,* and this Court will remand those matters for consideration by the Board. *See Archbold, supra.*

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the parties' briefs, the Court vacates the BVA decision in part and remands as to the denial of the appellant's claims for service connection for a psychiatric disorder, including PTSD, and for a heart condition; as to the denial of his claims to reopen the previously and finally disallowed claims for right-knee and right-hand disorders, *see* 38 C.F.R. § 3.156(a); *Hodge,* 155 F.3d at 1364; and as to the failure to adjudicate the three CUE claims, for issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* Public Law 95-202, 38 U.S.C. §§ 101(21)(E), 7104(a), (d)(1); 32 C.F.R. § 47.5(b)(8); 38 C.F.R. § 3.6(b)(6); 53 Fed. Reg. 2775 (1998); 62 Fed.Reg. 23232 (1997); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this decision and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). The Court also remands for issuance of a decision supported by an adequate statement of reasons or bases as to the three CUE claims that the RO denied and that the veteran appealed to the Board but which the Board failed to address. "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claims. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West,* 11 Vet. App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED IN PART AND REMANDED.