﻿Citation Nr: AXXXXXXXX
Decision Date: 12/12/18 Archive Date: 12/12/18

DOCKET NO. 180917-382
DATE: December 12, 2018
ORDER
New and relevant evidence having been submitted, the application to readjudicate the previously denied claim of service connection for Reiter’s syndrome is granted, and the claim will be readjudicated.
Service connection for Reiter’s syndrome is granted.
Service connection for sleep apnea, to include as due to Reiter’s syndrome, is denied.
REMANDED
Entitlement to a 10 percent rating based upon multiple, noncompensable, service-connected disabilities, pursuant to 38 C.F.R. § 3.324, is remanded.
FINDINGS OF FACT
1. In a July 1994 rating decision, service connection for Reiter’s syndrome was denied; a notice of disagreement and/or new and material evidence was not submitted within one year of notice of that decision. 
2. In an October 2012 rating decision, VA again denied service connection for Reiter’s syndrome; the Veteran filed a timely notice of disagreement, but did not submit a substantive appeal, VA Form 9, within the applicable time period after receipt of a statement of the case. 
3. The evidence added to the record since the October 2012 decision tends to prove the claim of service connection for Reiter’s syndrome. 
4. The Veteran’s Reiter’s syndrome first manifested during active service and has continued since service.
5. The preponderance of the evidence is against finding that the Veteran’s sleep apnea began during active service, or is otherwise related to an in-service injury, event, or disease.
CONCLUSIONS OF LAW
1. The July 1994 and October 2012 ratings decisions that denied the Veteran’s claim of service connection for Reiter’s syndrome are final. 38 U.S.C. § 7105; 38 C.F.R. § 20.1103. 
2. As the evidence received subsequent to the October 2012 rating decision is new and relevant, the requirements to readjudicate the claim of service connection for Reiter’s syndrome are met. 38 U.S.C. §§ 5108, 7105; 38 C.F.R. § 3.102. 
3. The criteria for service connection for Reiter’s syndrome have been met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).
4. The criteria for service connection for sleep apnea, to include as due to Reiter’s syndrome, have not been met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.
The Veteran served on active duty from February 1983 to August 1992. On June 28, 2018, VA received the Veteran’s opt-in selection of a higher-level review of his appeal through RAMP. In a September 2018 rating decision, the higher-level reviewer denied the Veteran’s appeal. During the same month, the Veteran requested Board review through the evidence submission lane. Consequently, this case comes before the Board of Veterans’ Appeals (Board) on appeal from the September 2018 rating decision by the Department of Veterans Affairs (VA). 
As the current appeal stems from the Veteran’s September 2018 selection of the evidence submission lane at the Board, in which he acknowledged that his appeal will be based upon all evidence submitted to VA as of 90 days after the date of that election, only evidence through December 2018 will be considered. Notably, in October 2018, the Veteran’s representative submitted a written brief and explicitly waived any additional time left to submit evidence.
VA notes that the Veteran has previously filed for service connection for various manifestations of his Reiter’s syndrome. VA should take special care to make sure that all of the Veteran’s manifestations are considered when assigning him a rating for his Reiter’s syndrome. 
 
New and Relevant Evidence
A claimant may request re-adjudication of a previously denied claim, if new and relevant evidence is presented or secured. VA will readjudicate the claim taking into consideration all of the evidence of record. New evidence means existing evidence not previously submitted to agency decisionmakers. The term “relevant evidence” means evidence that tends to prove or disprove a matter in issue. The standard shall not be construed to impose a higher evidentiary threshold than the new and material evidence standard that was in effect prior to the date of the enactment of the Appeals Modernization Act. See 38 U.S.C. § 5108; Pub. L. No. 115-55. 
1. Whether new and relevant evidence has been received to readjudicate the claim of service connection for Reiter’s syndrome
The Veteran is seeking service connection for the previously-denied claim for Reiter’s syndrome. Based on the additional evidence added to the record since the previous final denial of the Veteran’s claim, the Board finds that new and relevant evidence has been added to the record.
The Veteran’s Reiter’s syndrome claim was originally denied in a July 1994 rating decision. A review of that rating decision reveals that at the time, VA declined to grant service connection as Reiter’s syndrome was not diagnosed during service or diagnosed within one year of discharge. He did not submit a notice of disagreement with the adverse decision. Additionally, new and material evidence pertaining to the issue was not received by VA or constructively in its possession within one year of written notice to the Veteran of the rating decision. Therefore, that decision became final.
In August 2010, the Veteran filed a new claim of service connection for Reiter’s syndrome. The claim was denied in an October 2012 rating decision. VA concluded that the Veteran did not have a current disability, an event in service, or a link between a current disability and service. The Veteran filed a timely notice of disagreement. After receiving a statement of the case in July 2016, he did not file a substantive appeal, VA Form 9, within 60 days of notification. Additionally, new and material evidence pertaining to the issues was not received by VA or constructively in its possession within one year of written notice to the Veteran of the rating decision. Therefore, that decision became final.
Since the last final decision, three opinions from VA medical professionals have been added to the record. The examiners clearly note that the Veteran’s Reiter’s syndrome began during service. As the opinions address all of the necessary elements of service connection and tend to prove service connection, the Board concludes that new and relevant evidence has been presented with respect to the Veteran’s service connection claim for Reiter’s syndrome. Therefore, the claim will be readjudicated.
2. Service connection for Reiter’s syndrome
The Veteran contends that he has been diagnosed with Reiter’s syndrome that first manifested during military service. 
The Board concludes that the Veteran has a current diagnosis of Reiter’s syndrome that began during active service. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a). 
Numerous VA examiners and physicians have opined in favor of a connection between the Veteran’s Reiter’s syndrome and his military service. Below, the Board has noted at least seven positive nexus opinions. The earliest opinions were provided in 1993 and February 1994, less than two years after the Veteran separated from service. In a 1993 medical appointment, whose exact date is unknown, a physician recorded the Veteran’s reported history of previous complaints of urethritis, iritis, and lower back pain during service. At the time, the physician stated that even without x-rays, service records, and laboratory work, the Veteran presents as about a convincing a story for Reiter’s syndrome as he had ever heard. In February 1994, the same physician evaluated the Veteran. The physician examined the Veteran’s military records. The physician noted unexplained pains, infections, and the presence of a positive HLA-B27 inflammation test during service. The Board notes that these complaints are amply documented in the Veteran’s service treatment records. As a result, the physician stated that the diagnosis is clear, the Veteran has Reiter’s syndrome. Further, the physician stated that as the Veteran’s symptoms and illness began while on active duty, he may be entitled to service connection benefits. 
Multiple VA examiners have also determined that the Veteran’s Reiter’s syndrome began during service. For example, an April 1994 examiner noted that the Veteran has a history of Reiter’s syndrome, diagnosed approximately six years prior. In June 2012, a VA examiner noted that the multiple recorded instances of iritis during military service were at least as likely as not related to or caused by early manifestations of Reiter’s syndrome. A September 2012 VA examiner and a January 2018 VA examiner concurred that the Veteran’s iritis is at least as likely as not due to or aggravated by his Reiter’s syndrome. Most recently, in June 2018 a VA examiner, who was confused by the posed medical question, denied that the Veteran’s iritis caused his Reiter’s syndrome. No one, including the Veteran, has suggested this reverse causation. However, the same examiner definitively stated that the Veteran’s Reiter’s syndrome can be seen to have first started with the iritis that was diagnosed during service in 1988.
As a result of the overwhelming evidence that the Veteran’s Reiter’s syndrome manifested during military service, the Board finds that service connection for Reiter’s syndrome should be granted. 
3. Service connection for sleep apnea
The Veteran asserts that his sleep apnea is related to military service. 
The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.
The Board concludes that, while the Veteran has a diagnosis of sleep apnea, the preponderance of the evidence is against finding that it began during active service, or is otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d).
Initially, the Board acknowledges that the Veteran was not provided with a VA examination for his service-connection claim. However, the Board finds that a VA examination is not required here because competent evidence has not been presented indicating that the existence of a disability or persistent or recurrent symptoms of a disability may be associated with the Veteran’s active service. Additionally, there is no evidence to show that the claimed disability occurred in service or is associated with service. See McClendon v. Nicholson, 20 Vet App. 79 (2006).
Service treatment records do not reflect complaints of, treatment for, or a diagnosis related to sleep apnea. Significantly, an examination conducted one year prior to his discharge was absent of any complaints of or observed symptoms related to a sleeping condition. 
In fact, the post-service evidence does not reflect symptoms related to a sleep disorder for multiple decades after the Veteran left active duty service in August 1992. The first indication of sleep problems was in November 2016, when a medical provider noted a sinus pause during sleep as well as risk factors for sleep apnea, including snoring and obesity. As the disorder did not start during service or continue since the time of service, continuity is not established based on the clinical evidence.
The Veteran has asked for consideration for direct service connection as well as secondary service connection to his Reiter’s syndrome. With regards to the direct service connection argument, he has not explained why he believes his sleep disorder manifested during service when the first clinical symptoms of a possible sleep disorder was over two decades after he left military service. He has also not specified what symptoms he may have experienced in service. Moreover, the Board notes that the Veteran submitted claims for other VA benefits prior to claiming the issues on appeal. 
With regards to the Veteran’s secondary service connection argument, in an April 2018 statement, the Veteran suggested that his sleep apnea is secondary to the weight gain caused by his Reiter’s syndrome. Although obesity is not a disease or injury for purposes of 38 U.S.C. §§ 1110 and 1131 and therefore may not be service connected on a direct or secondary basis, obesity may be an “intermediate step” between a service-connected disability and a current disability that may be connected on a secondary basis (1) if a previously service-connected disability caused him to become obese; (2) that obesity was a substantial factor in causing secondary disability; and (3) the secondary disability would not have occurred but for the obesity. See VAOPGCPREC 1-2017 (Jan. 6, 2017). 
However, in this case, the Veteran has not submitted any evidence of an etiological link between his Reiter’s syndrome and weight gain. While it is true that Reiter’s syndrome may impact mobility and limit exercise, this alone is insufficient to establish that one caused the other. Moreover, while the Board acknowledges that sleep apnea is sometimes cause by weight gain, there has not been a demonstration that his obesity was not only a substantial factor in causing his sleep apnea in this case. 
There are no indications that the Veteran’s sleep disorder has a nexus with his military service. Specifically, there are no treatment records establishing that the Veteran’s disorder is related to active duty or a service-connected disability, nor has any physician asserted that such a relationship exists. 
While the Veteran believes his disorder is related to an in-service injury, event, or disease, including his Reiter’s syndrome, he is not competent to provide a nexus opinion in this case. This issue is also medically complex, as it requires advanced medical knowledge. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). The Board reiterates that the preponderance of the evidence weighs against findings that any in-service injury, event, or disease occurred.
Without any basis to suggest that the Veteran’s sleep apnea is related to military service, to include his Reiter’s syndrome, the Board finds that the weight of the competent evidence does not attribute the disorder to military service. In reaching the above conclusion, the Board also considered the doctrine of reasonable doubt. 38 U.S.C. § 5107(b). However, as the most probative evidence is against the claim, the doctrine is not applicable in this case. See also, e.g., Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).
REASONS FOR REMAND
1. Entitlement to a 10 percent rating based upon multiple, noncompensable, service-connected disabilities, pursuant to 38 C.F.R. § 3.324, is remanded.
Under 38 C.F.R. § 3.324, a veteran with two or more separate, permanent, service-connected disabilities of such character as clearly to interfere with normal employability, even though none of the disabilities may be of compensable degree under the Rating Schedule, shall be awarded a 10 percent rating, but not in combination with any other rating. In this instance, the Board has granted service connection for Reiter’s syndrome. As a result, it is highly likely that the Veteran will be assigned one or more compensable ratings for his Reiter’s syndrome. Once the Veteran is assigned a compensable rating, this claim must be denied as a matter of law. However, until ratings are assigned, this claim must remain active. 
Therefore, after one or more ratings are assigned for the Veteran’s Reiter’s syndrome, readjudicate the issue of entitlement to a 10 percent rating under 38 C.F.R. § 3.324. See Henderson v. West, 12 Vet. App. 11, 20 (1998); Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).
 
The matter is REMANDED for the following action:
After one or more ratings are assigned for the Veteran’s Reiter’s syndrome, readjudicate the issue of entitlement to a 10 percent rating under 38 C.F.R. § 3.324. 
 
B.T. KNOPE
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD A. Borman, Associate Counsel