Citation Nr: 1801841 
Decision Date: 01/10/18 Archive Date: 01/23/18

DOCKET NO. 13-21 916A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUES

1. Entitlement to service connection for a left ankle disorder.

2. Entitlement to service connection for a left knee disorder.

3. Entitlement to service connection for a left hand/wrist disorder, manifested by numbness and tingling in the forearm and fingers.
 
4. Entitlement to a compensable rating for bilateral hearing loss, prior to March 14, 2014, and to a rating higher than 10 percent, thereafter.

5. Entitlement to a rating higher than 30 percent for posttraumatic stress disorder (PTSD) with unspecified depressive disorder, prior to April 22, 2016, and to a rating higher than 70 percent, thereafter.

6. Entitlement to a total disability rating based on individual unemployability (TDIU), prior to April 22, 2016.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

L. Edwards Andersen, Counsel


INTRODUCTION

The Veteran had active service from October 1966 to October 1970. 

This matter comes before the Board of Veterans' Appeals (BVA or Board) from a February 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in New Orleans, Louisiana. A notice of disagreement was received in January 2011, a statement of the case was issued in August 2013, and a VA Form 9 was received in August 2013. 

In a July 2014 rating decision, the RO granted an increased evaluation of 10 percent for bilateral hearing loss, effective March 14, 2014. In an August 2016 rating decision, the RO granted an increased rating of 70 percent for PTSD with unspecified depressive disorder, effective April 22, 2016. Despite the grant of these increased evaluations, the Veteran has not been awarded the highest possible evaluations. As a result, he is presumed to be seeking the maximum possible evaluations. The issues remain on appeal, as the Veteran has not indicated satisfaction with the ratings. A.B. v. Brown, 6 Vet. App. 35 (1993).

The Veteran requested a hearing before the Board. The requested hearing was conducted in February 2015 by the undersigned Veterans Law Judge. A transcript is associated with the claims file.

In May 2015, the Board remanded these claims for additional development. 

In an August 2016 rating decision, the RO granted entitlement to a TDIU, effective April 22, 2016. However, because the claim for TDIU was effectively denied for the period of time prior to April 22, 2016, the issue of entitlement to a TDIU prior to that date remains on appeal.

The issues of entitlement to service connection for a left knee disorder, a left hand disorder and entitlement to a TDIU, prior to April 22, 2016, are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


FINDINGS OF FACT

1. A left ankle disorder is not causally or etiologically due to service and did not have an onset within one year of discharge.

2. Prior to March 14, 2014, the Veteran's bilateral hearing loss was manifested by puretone threshold averages that corresponded to at most, a level "I" hearing for the right ear and a level "I" hearing for the left ear; these combined numeric designations result in a noncompensable rating.

3. From March 14, 2014, the Veteran's bilateral hearing loss is manifested by puretone threshold averages that corresponded to at most, a level "IV" hearing for the right ear and a level "IV" hearing for the left ear; these combined numeric designations result in a 10 percent rating.

4. Prior to April 22, 2016, the Veteran's PTSD with unspecified depressive disorder was not manifested by symptoms that more nearly approximate occupational and social impairment with reduced reliability and productivity.

5. From April 22, 2016, the Veteran's PTSD with unspecified depressive disorder is not manifested by symptoms that more nearly approximate total occupational and social impairment.


CONCLUSIONS OF LAW

1. Service connection for a left ankle disorder is not established. 38 U.S.C. §§ 1110, 1112, 5107 (West 2012); 38 C.F.R. §§ 3.303, 3.309 (2017).

2. Prior to March 14, 2014, the criteria for a compensable rating for bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5107 (West 2012); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2017).

3. From March 14, 2014, the criteria for a rating higher than 10 percent for bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5107 (West 2012); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2017).

4. Prior to April 22, 2016, the criteria for a rating higher than 30 percent, for PTSD with unspecified depressive disorder, have not been met. 38 U.S.C. §§1110, 1155, 5107 (West 2012); 38 C.F.R. §§ 4.7, 4.22, 4.130, Diagnostic Code 9411 (2017).

5. From April 22, 2016, the criteria for a rating higher than 70 percent, for PTSD with unspecified depressive disorder, have not been met. 38 U.S.C. §§1110, 1155, 5107 (West 2012); 38 C.F.R. §§ 4.7, 4.22, 4.130, Diagnostic Code 9411 (2017).




 (CONTINUED ON NEXT PAGE)


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. See 38 U.S.C. §§ 5102, 5103, 5103A, 5107, 5126 (West 2012); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2017). 

Adequate notice pertaining to the Veteran's claims was satisfied by letters provided to the Veteran in May 2010 and June 2010. The duty to notify has been fulfilled.

The duty to assist has also been met, and appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has obtained service treatment records, VA treatment records, and private treatment records. The Veteran was afforded VA examinations.

In May 2015, the Board remanded these claims for additional development. The evidence indicates that there has been substantial compliance with the Board's remand directives for these issues. See Stegall v. West, 11 Vet. App. 268 (1998); see also Dyment v. West, 13 Vet. App. 141 (1999) (holding that another remand is not required under Stegall where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103 (c)(2) requires that a "hearing officer" who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the Veteran has not raised any deficiency with the hearing. See Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016).

Based on the foregoing, the Board concludes that VA has satisfied the duty to assist. No further notice or assistance to the Veteran is required to fulfill VA's duties.

II. Entitlement to Service Connection for a Left Ankle Disorder

The Veteran seeks entitlement to service connection for a left ankle disorder.

Applicable Laws

Under the relevant laws and regulations, service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. 38 U.S.C. §§ 1110, 1131 (West 2012); 38 C.F.R. § 3.303 (a) (2017). 

In general, service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

In addition, for certain chronic diseases, such as arthritis, a presumption of service connection arises if the disease is manifested to a degree of 10 percent within a prescribed period following discharge from service; the presumptive period for arthritis is one year. 38 C.F.R. § 3.307, 3.309(a).

When the disease entity is established, there is no requirement of evidentiary showing of continuity. If the condition noted during service (or in the presumptive period) is not shown to be chronic or where the diagnosis of chronicity may be legitimately questioned, then generally a showing of continuity of symptomatology after discharge is required to support the claim. 38 C.F.R. § 3.303 (b).

In Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), the Federal Circuit recently limited the applicability of the theory of continuity of symptomatology in service connection claims to those disabilities explicitly recognized as "chronic diseases" in 38 C.F.R. § 3.309 (a). Because arthritis is specifically listed as a chronic disease under 38 C.F.R. § 3.309 (a), the theory of continuity of symptomatology is for application in the Veteran's claim of service connection.

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 4 (1990). Equal weight is not necessarily accorded to each piece of evidence contained in the record; not every item of evidence necessarily has the same probative value.

Furthermore, in determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of matter, the benefit of the doubt will be given to the Veteran. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.

Facts & Analysis

The Veteran asserts his current left ankle disorder is a result of an injury sustained during service. The Veteran testified that he was working on an airplane and slipped off the side, falling on his ankle. See February 2015 BVA Hearing Transcript, page 20.

First, the Board notes that the Veteran had a current diagnosis of degenerative joint disease of the left ankle. See November 2008 VA examination. As such, Shedden element (1) is met. 

Regarding element (2), an in-service incurrence or aggravation of a disease or injury, the Board notes that the Veteran's service treatment records note the Veteran complained of his left ankle in January 1966. It was noted there was no swelling. The Veteran was assessed with pes planus. The Veteran's separation examination noted right ankle trouble, but there was no mention of left ankle symptoms; however, the Board finds that element (2) is met.

Unfortunately, element (3), nexus, is not met. The Veteran was afforded a VA examination in November 2008. It was noted that the Veteran sprained his ankle during service. X-rays demonstrated mild degenerative changes. After examination, the examiner stated that the Veteran had age appropriate degenerative joint disease of the left ankle.

Similarly, the Veteran was afforded a VA examination in September 2010. The examiner noted that the Veteran had prior left ankle sprain with no significant residuals; his left ankle was normal for his age. The examiner opined that the Veteran's current left ankle disorder was not caused by or a result of the injury sustained during service. The examiner explained that the ankle x-rays were normal for his age, especially for someone who has always had a standing job. The examiner stated that if the Veteran had suffered a significant injury during service, some changes on x-rays or on examination would be noted and the Veteran would have had problems long before he first sought treatment for left ankle pain.

The Board finds the VA opinions highly probative because the examiners had the appropriate training, expertise and knowledge to evaluate the claimed disorder. Furthermore, the examiners also reviewed the records, performed a clinical examination, and considered the Veteran's statements regarding the nature and history of his condition. There are no other probative medical opinions of record.

Furthermore, the Board finds that the Veteran's current left ankle disorder did not have an onset within one year of discharge from service. The earliest evidence of his current left ankle disorder is approximately 36 years after service in 2006. As such, the Board finds that the evidence does not indicate the Veteran's current left ankle disorder had an onset within one year of discharge from service.

The Board has considered the Veteran's own statements regarding the nature and etiology of his disorder. The Board acknowledges that the Veteran is competent to give evidence about what he experiences; for example, he is competent to discuss pain and other symptoms. See, e.g., Layno v. Brown, 6 Vet. App. 465 (1994). 

In the present case, however, the Board finds that the Veteran's lay statements are outweighed by the post-service treatment records. Further, the Veteran is not competent to diagnose any left ankle disorder or render an opinion as to the cause or etiology of any current left ankle disorder because he does not have the requisite medical knowledge or training. See Rucker v. Brown, 10 Vet. App. 67, 74 (1997) (stating that competency must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence). Accordingly, though the Veteran is competent to report his symptoms, he is not competent to provide an opinion as to nature and etiology.

In summary, although the Veteran has in-service symptoms and a current diagnosis, there are no probative persuasive medical opinions linking his current disorder to service, and there is no probative evidence that his disorder began within one year of discharge.

For these reasons, the Board finds that a preponderance of the evidence is against the claim for service connection for a left ankle disorder.

III. Increased Ratings

The Veteran seeks entitlement to increased ratings for his bilateral hearing loss and PTSD with unspecified depressive disorder.

Disability ratings are based on the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two ratings shall be applied, the higher evaluations will be assigned if the disability more closely approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The determination of whether an increased disability rating is warranted is to be based on a review of the entire evidence of record and the application of all pertinent regulations. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

The Board has considered the entire record, including the Veteran's VA clinical records and private treatment records. These show complaints and treatment, but will not be referenced in detail. The Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000). Therefore, the Board will discuss the evidence pertinent to the rating criteria and the current disability.

The Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

A. Entitlement to a Compensable Rating for Bilateral Hearing Loss, Prior to March 14, 2014, and to a Rating Higher than 10 Percent, Thereafter

Service connection for bilateral hearing loss was established by February 2009 rating decision, at which time a noncompensable rating was assigned, effective from June 7, 2007. In a July 2014 rating decision, the RO granted an increased evaluation of 10 percent for bilateral hearing loss, effective March 14, 2014.

The basis for evaluating defective hearing is the impairment of auditory acuity as measured by pure tone threshold averages, within the range of 1000 to 4000 Hertz and speech discrimination using the Maryland CNC word recognition test. 38 C.F.R. § 4.85. 

Pure tone threshold averages are derived by dividing the sum of the pure tone thresholds at 1000, 2000, 3000, and 4000 by four. Id. The pure tone threshold averages and the Maryland CNC test scores are given a numeric designation, which are then used to determine the current level of disability based upon a pre-designated schedule. Tables VI and VII in 38 C.F.R. § 4.85 (2017). Under these criteria, the assignment of a disability rating is a "mechanical" process of comparing the audiometric evaluation to the numeric designations in the rating schedule. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1993). 

Entitlement to a Compensable Rating Prior to March 14, 2014

The Veteran was afforded a VA examination in August 2010. On the authorized audiological evaluation in August 2010, pure tone thresholds, in decibels, were as follows:



 HERTZ



1000
2000
3000
4000
RIGHT
35
45
45
60
LEFT
35
45
55
55

The Veteran's August 2010 VA audiology examination shows a right ear pure tone threshold average of 46.25 decibels with speech recognition of 96 percent. This corresponds to a numeric designation of "I." Table VI in 38 C.F.R. § 4.85. His left ear manifests a pure tone threshold average of 47.5 decibels with speech recognition of 96 percent. This corresponds to a numeric designation of "I." Id. These combined numeric designations then result in a rating of 0 percent under Table VII.

For this time period, the medical evidence of record does not indicate the Veteran meets the requirements for a higher rating based on 38 C.F.R. § 4.85 or § 4.86.

Thus, the Veteran is not entitled to a compensable rating for his bilateral hearing loss, prior to March 14, 2014. The Board expressly acknowledges its consideration of the lay evidence of record when adjudicating this claim, including the Veteran's report of his difficulty with hearing affecting his ability to communicate. The Board also acknowledges that the Veteran is in receipt of hearing aids. However, the rating criteria for hearing impairment is designed to consider the Veteran's diminished hearing acuity, and as outlined above, the assignment of a disability evaluation on a schedular basis is a purely mechanical process based on audiometric test results. 

As such, based on the Veteran's audiological examination the Veteran's hearing loss does not meet the criteria for a compensable rating prior to March 14, 2014.

Entitlement to a Rating Higher than 10 Percent, from March 14, 2014

The RO determined that the Veteran was entitled to a rating of 10 percent, based on a March 14, 2014 audiological examination.

On the authorized audiological evaluation in March 2014, pure tone thresholds, in decibels, were as follows:



 HERTZ



1000
2000
3000
4000
RIGHT
45
55
60
60
LEFT
45
55
70
70

The Veteran's audiology evaluation shows a right ear pure tone threshold average of 55 decibels with speech recognition of 80 percent. This corresponds to a numeric designation of "IV." Table VI in 38 C.F.R. § 4.85. His left ear manifests a pure tone threshold average of 60 decibels with speech recognition of 80 percent. This corresponds to a numeric designation of "IV." Id. These combined numeric designations then result in a rating of 10 percent under Table VII.

The Veteran was afforded a VA examination in April 2016. On the authorized audiological evaluation in April 2016, pure tone thresholds, in decibels, were as follows:



 HERTZ



1000
2000
3000
4000
RIGHT
40
45
50
55
LEFT
45
45
60
65

The Veteran's audiology evaluation shows a right ear pure tone threshold average of 48 decibels with speech recognition of 72 percent. This corresponds to a numeric designation of "IV." Table VI in 38 C.F.R. § 4.85. His left ear manifests a pure tone threshold average of 54 decibels with speech recognition of 76 percent. This corresponds to a numeric designation of "IV." Id. These combined numeric designations then result in a rating of 10 percent under Table VII.

Thus, the Veteran is not entitled to a rating higher than 10 percent for his bilateral hearing loss, from March 14, 2014. 

The Board acknowledges the Veteran's assertion that his bilateral hearing loss warrants a higher rating. However, in determining the actual degree of disability under the Schedule for Ratings, an objective examination is required. 

The Board acknowledges the Veteran's assertions regarding the severity of his hearing loss and how it has affected his daily activities. The Board acknowledges that the Veteran is competent to report the symptomatology associated with his hearing loss. See Layno v. Brown, 6 Vet. App. 465 (1994). Furthermore, the Board finds the Veteran's statements to be credible. See Barr v. Nicholson, 21 Vet. App. 303, 307-08 (2007); Washington v. Nicholson, 19 Vet. App. 362, 368-69 (2005). The Veteran's assertions that he has trouble hearing are corroborated by the results of his audiogram testing with levels of twenty and over. The threshold for normal hearing is between 0 and 20 decibels, and any higher threshold shows some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 160 (1993). However, as noted above, disability ratings for hearing impairment are to be derived by the mechanical application of the Rating Schedule to the numeric designations assigned based on objective audiometric test results. 

Accordingly, based on the Veteran's audiological examinations, the preponderance of the evidence is against entitlement to a compensable rating prior to March 14, 2014, and to a rating higher than 10 percent, thereafter.

B. Entitlement to a Rating Higher than 30 Percent for PTSD with Unspecified Depressive Disorder, Prior to April 22, 2016 and to a Rating Higher than 70 Percent, Thereafter

Service connection for PTSD with unspecified depressive disorder was established by April 2009 rating decision, at which time a 30 percent rating was assigned, effective from June 7, 2007. A claim for an increased rating was received in January 2010. In an August 2016 rating decision, the RO granted an increased evaluation of 70 percent, effective April 22, 2016.

The current regulations establish a general rating formula for mental disorders. 38 C.F.R. § 4.130. Ratings are assigned according to the manifestation of particular symptoms. However, the use of the term "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). 

Accordingly, the evidence considered in determining the level of impairment is not restricted to the symptoms provided in the diagnostic codes. Instead, VA must consider all symptoms of a Veteran's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the Diagnostic and Statistical Manual of Mental Disorders. 

Prior to April 22, 2016, the Veteran is rated as 30 percent disabled under 38 C.F.R. § 4.130, Diagnostic Code 9411. A rating of 30 percent is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupation tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: a depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, Diagnostic Code 9411. 

A rating of 50 percent is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (retention of only highly learned material, forgetting to complete tasks); impaired judgment, impaired abstract thinking; disturbances of motivation and mood; and difficulty establishing and maintaining effective work and social relationships. Id. 

From April 22, 2016, the Veteran is rated at 70 percent. A 70 percent evaluation is warranted where there is objective evidence demonstrating that the Veteran has occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to suicidal ideation; obsessional rituals which interfere with his routine activities, speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, or effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation, neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and the inability to establish and maintain effective relationships. Id.

A 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

A global assessment of functioning (GAF) rating is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness. Richard v. Brown, 9 Vet. App. 266, 267 (1996).

Prior to April 22, 2016

The Veteran was afforded a VA examination in March 2009. The Veteran reported he had one prior marriage, with two children. He indicated his relationship with his children was better now, but was strained in the past. He indicated that he currently had a girlfriend, for the last 15 years. The Veteran reported that he did not have much of a social life; he did not have a car and spent most of his time with family. He also reported that he enjoyed watching television. The Veteran did not report any suicide attempts. He stated that he was involved in a few altercations, but the last one was approximately four years prior. Examination revealed the Veteran was clean and casually dressed. Psychomotor activity and speech were unremarkable. His affect was appropriate, and attention intact, however his mood was dysphoric. Orientation was intact to person, time and place. The examiner indicated the Veteran did have suicidal ideation but no plans or intent. There were no reported hallucinations, inappropriate behavior, or obsessive/ritualistic behavior. There were no reported panic attacks or homicidal thoughts. His impulse control was fair, but he had a few episodes of violence since leaving the military. There were no problems with activities of daily living and he was able to maintain daily hygiene. Remote, recent, and immediate memory were normal. The examiner noted that the Veteran was employed at the time. His GAF score was 60, indicating moderate symptoms or moderate difficulty in social or occupational functioning.

The Veteran was afforded a VA examination in September 2010. The Veteran again indicated that he was in a relationship with his girlfriend and that he communicated regularly with his children. He also indicated he was close with his siblings. The Veteran reported watching television for entertainment and walking for exercise. His general appearance was clean; his affect was normal and his mood good. He did not report any hallucinations or delusions. The Veteran did not have obsessive/ritualistic behavior, panic attacks, or homicidal thoughts. He had mildly impaired recent memory, but normal remote and immediate memory. The examiner indicated that the Veteran had chronic irritability or outbursts of anger and difficulty concentrating, but overall the Veteran's symptoms were generally mild in severity. The Veteran stated that he was no longer working, but Veteran reported he was laid off from his most recent job due to the downturn in the economy. The Veteran described himself as an "excellent" employee for the seven years he worked for that employer. The examiner specifically stated that the Veteran indicated his unemployment was not due to the effects of his mental disorder. A GAF score of 58 was assigned, indicating moderate symptoms.

The Veteran submitted statements indicating that his symptoms are more severe than what is represented by 30 percent, prior to April 22, 2016. The Veteran also testified at the February 2016 Board hearing that he experiences symptoms such as depression, memory loss, irritability, and suicidal thoughts. The Board notes that the Veteran is competent to give evidence about what he experiences. Layno v. Brown, 6 Vet. App. 465 (1994). Furthermore, the Board finds the statements to be credible. See Barr v. Nicholson, 21 Vet. App. 303, 307-08 (2007); Washington v. Nicholson, 19 Vet. App. 362, 368-69 (2005). 

However, the evidence does not show that overall the Veteran's PTSD with unspecified depressive disorder was productive of symptoms that more nearly approximate occupational and social impairment with reduced reliability and productivity to warrant a rating of 50 percent, prior to April 22, 2016. Despite the Veteran's reports of feeling depressed and endorsing symptoms of suicidal ideation and memory loss, the evidence for the period under consideration consistently showed that the Veteran was oriented in all spheres, was clean, appropriately groomed and dressed, had appropriate affect, normal speech, and intact judgment. While the Veteran had impaired recent memory, his remote and immediate memory were normal, and he was not found to have impairment in abstract thinking, or have hallucinations or obsessional rituals. Moreover, although he indicated he did not have much social interaction, overall, he was able to establish and maintain social relationships, evidenced by a long-term relationship with his girlfriend, and his ability to maintain relationships with his children and siblings. Furthermore, although the Veteran reported he was no longer working, the Veteran himself indicated during the September 2010 VA examination that his unemployment was not due to the effects of his mental disorder.

The Board realizes that the symptoms noted in the rating criteria are not intended to be an exhaustive list, but are examples of the types and severity of symptoms that indicate a certain level of disability. Thus, although the Veteran has endorsed some symptoms indicative of higher disability ratings, the Board believes that based on the overall record evidence prior to April 22, 2016, including the Veteran's lay statements, the frequency, duration, and severity of the Veteran's PTSD with unspecified depressive disorder symptoms are most consistent with the currently assigned 30 percent rating.

From April 22, 2016

In an August 2016 rating decision, the Veteran's rating was increased to 70 percent, effective April 22, 2016, the date of the Veteran's VA examination.

At the April 2016 VA examination, the examiner indicated that the Veteran had occupational and social impairment with deficiencies in most areas. The Veteran reported he was still in a relationship with his now fiancé. He indicated he has bad dreams about his time in service, regularly, and feels stressed and helpless. The Veteran stated his irritability has gotten worse; he fights with his fiancé all the time and he reported his children told him he was "getting worse." He indicated he gets very loud, but not violent. The Veteran also reported the following: depression, anxiety, suspiciousness, hypervigilance, occasional panic attacks, memory problems, trouble concentrating, difficulty adapting to stressful circumstances, and thoughts of suicide. He also indicated he was arrested recently. The examiner opined that the Veteran's symptoms of PTSD are minimally impairing in a work setting, aside from his irritability, on which working with others would be difficult. The examiner explained that the Veteran's secondary depression causes decrease in motivation, efficiency and could increase absenteeism, while the Veteran's tolerance for stress is diminished due to both disorders and may cause difficulty with working in high pressure occupational settings.

Having carefully considered the Veteran's contentions in light of the evidence of record and the applicable law, the Board finds that the Veteran's PTSD with unspecified depressive disorder is appropriately evaluated as no more than 70 percent disabling for the period since April 22, 2016. 

As outlined above, since April 22, 2016, the evidence shows that the Veteran's PTSD with unspecified depressive disorder has resulted in occupational and social impairment with deficiencies in most areas. However, the Veteran has not exhibited symptoms indicating total occupational and social impairment. The Board notes that the April 2016 VA examiner indicated that the Veteran's PTSD and depressive disorder symptoms make it difficult to maintain employment; however, as noted in the April 2016 VA examination, he did not have symptoms such as gross impairment in thought processes or communication, persistent delusions or hallucinations, or grossly inappropriate behavior. In fact, during the VA examinations, the Veteran consistently denied delusions and hallucinations, he was appropriately groomed, and oriented to time and place. Furthermore, throughout the course of the appeal, it was noted that the Veteran maintained a relationship with his girlfriend, his children and his siblings. Therefore, it cannot be said that he experiences total social impairment.

The Board realizes that the symptoms noted in the rating criteria are not intended to be an exhaustive list, but are examples of the types and severity of symptoms that indicate a certain level of disability. Thus, the Board believes that based on the overall record, including the Veteran's lay statements, the effects of the Veteran's symptoms are not described to be of a type, frequency, and severity that are in accord with the level of impairment contemplated by the criteria for a 100 percent schedular rating. 

The Board concludes that the symptomatology noted in the medical and lay evidence has been adequately addressed by the evaluation assigned and do not more nearly approximate the criteria for a higher evaluation at any time during all relevant periods on appeal. See 38 C.F.R. § 4.130, Diagnostic Code 9411.

In reaching the conclusions above, the Board has considered the applicability of the benefit of the doubt doctrine. See 38 U.S.C. § 5107 (b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

The Board is grateful to the Veteran for his honorable service, and regrets that a more favorable outcome could not be reached.


ORDER

Entitlement to service connection for a left ankle disorder is denied.

Entitlement to a compensable rating for bilateral hearing loss, prior to March 14, 2014, and to a rating higher than 10 percent, thereafter, is denied.

Entitlement to a rating higher than 30 percent for PTSD with unspecified depressive disorder, prior to April 22, 2016, and to a rating higher than 70 percent, thereafter, is denied.


REMAND

The Veteran seeks entitlement to service connection for a left knee disorder and a left hand disorder. He also seeks entitlement to a TDIU, prior to April 22, 2016.

Unfortunately, a remand is required. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's remaining claims so that he is afforded every possible consideration.


Left Knee

The Veteran asserts he injured his left knee during service. Service treatment records indicate the Veteran sought treatment for a pulled muscle in his left leg in February 1970. The treatment record is difficult to discern, but it appears to indicate the Veteran was assessed with a strain. Currently, he is diagnosed with left knee meniscal degeneration. See August 2006 VA treatment note. He is also diagnosed with left knee degenerative joint disease. See June 2008 VA x-ray. To date, a medical opinion has not yet been obtained regarding whether the Veteran's current left knee disorder is causally or etiologically due to his injury during service. On remand, a medical opinion must be obtained. 

Left Hand

The Veteran asserts he experiences numbness and tingling in his left hand as a result of an injury during service. Service treatment records document the Veteran cut his left wrist after a window blew out in June 1968, requiring sutures.

The Veteran was afforded a VA examination in September 2010, at which time the examiner noted the Veteran's numbness and tingling of the left forearm and all digits of his left hand. Physical examination revealed an overall decrease in strength and dexterity of the left hand; however, no neurological testing was completed. Given that the Veteran's symptoms appear to be neurological, on remand, neurological testing should be completed and a medical opinion should be obtained addressing whether the Veteran's current left hand disorder is causally or etiologically due to the in-service injury.

TDIU, Prior to April 22, 2016

The Board notes that prior to April 22, 2016, the Veteran does not currently meet the schedular percentages required for entitlement to a TDIU. Therefore, the Board finds that the Veteran's claim for entitlement to a TDIU, prior to April 22, 2016, is intertwined with the pending service connection claims on appeal, as the outcome of the service connection claims could affect his schedular ratings. See Henderson v. West, 12 Vet. App. 11, 20 (1998), citing Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two or more issues are inextricably intertwined if one claim could have significant impact on the other). As such, a decision on the claim of entitlement to a TDIU, prior to April 22, 2016, is being deferred pending completion of the development ordered on remand to avoid piecemeal adjudication.

Accordingly, the case is REMANDED for the following action:

1. Obtain and associate with the claims file all updated treatment records.

2. Obtain an addendum opinion for the Veteran's claimed left knee disorder. 

If deemed necessary by the examiner, afford the Veteran a VA examination. All testing deemed necessary by the examiner should be performed and the results reported in detail.

The claims folder must be made available to the examiner for review. The examiner is asked to review all pertinent records associated with the claims file, including service treatment records.

a) The examiner should offer comments and an opinion as to whether it is at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran's current left knee disorder is causally or etiologically due to service, to include the Veteran's documented left leg injury in February 1970. 

b) The examiner should also offer comments and an opinion on the Veteran's theory that his current left knee disorder is due to an injury he sustained during service by falling off a plane.

In providing these opinions, the examiner must acknowledge and discuss any lay evidence of a continuity of symptomatology. 

All opinions must be supported by a clear rationale, and a discussion of the facts and medical principles involved.

3. Afford the Veteran a VA examination for his left hand, to include a neurological examination of the left hand. All testing deemed necessary by the examiner should be performed and the results reported in detail.

The claims folder must be made available to the examiner for review. The examiner is asked to review all pertinent records associated with the claims file, including service treatment records.

a) The examiner should clarify the Veteran's diagnosis of the left hand/wrist.

b) The examiner should offer comments and an opinion as to whether it is at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran's current left hand/wrist disorder is causally or etiologically due to service, to include the documented left wrist injury in June 1968. 

c) The examiner should offer comments and an opinion on the Veteran's theory that his current left hand symptoms of numbness and tingling are due to the in-service injury to his left wrist.

In providing these opinions, the examiner must acknowledge and discuss any lay evidence of a continuity of symptomatology. All opinions must be supported by a clear rationale, and a discussion of the facts and medical principles involved.

4. After completing the above, and any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claims should be readjudicated based on the entirety of the evidence. 

If the claims remain denied, the Veteran and his representative should be issued a supplemental statement of the case. 

An appropriate period of time should be allowed for response.

5. Thereafter, the case should be returned to the Board for further appellate consideration, if otherwise in order. The Board intimates no opinion as to the outcome of this case.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs