# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-7442

FRED W. FOSTER, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 20, 2021                                    Decided October 20, 2021)

*J. Corey Creek*, of Bethesda, Maryland, with whom *Glenn R. Bergmann*, of Bethesda, Maryland, was on the brief, for the appellant.

*Brent A. Bowker*, of Washington, D.C., with whom *William A. Hudson, Jr.*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Kenneth A. Walsh*, Deputy Chief Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before BARTLEY, *Chief Judge*, and ALLEN and FALVEY, *Judges*.

ALLEN, *Judge*: Appellant Fred W. Foster served the Nation honorably in the United States Army from April 1968 to November 1969.[1] In this appeal, which is timely and over which the Court has jurisdiction,[2] he challenges a September 5, 2019, decision of the Board of Veterans' Appeals that determined that (1) the reduction of appellant's disability rating for prostate cancer residuals from 100% to 10%, effective January 1, 2019, and (2) the discontinuance of special monthly compensation (SMC), also effective as of January 2019, were both proper.[3]

This matter was submitted to a panel of the Court principally to address the operation of 38 C.F.R. § 4.115b, Diagnostic Code (DC) 7528, the DC under which appellant's prostate cancer

---

[1] Record (R.) at 1678.

[2] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[3] The Board characterized the issue on appeal as "entitlement to restoration" of the 100% rating and SMC. At oral argument, the Secretary conceded that this was an improper characterization of the issues before the Board. Oral Argument (O.A.) at 35:50-36:28, *Foster v. McDonough*, U.S. Vet. App. No. 19-7442 (oral argument held July 20, 2021), http://www.uscourts.cavc.gov/oral_arguments_audio.php. All too often, the Board incorrectly describes the issues before it when the Board considers reductions in ratings. Although we conclude today that the "reduction" at issue here was not a rating reduction in the legal sense, we remind the Board of the importance of correctly identifying the issues before it.

and its residuals are rated. As we explain, the Board did not err when it affirmed the discontinuance of appellant's 100% disability rating under the plain terms of DC 7528, because such a discontinuance is not a rating reduction in the traditional sense and thus did not require the special procedures for rating reductions. But that is not the end of the matter. We also conclude, consistent with the Secretary's concession, that the Board failed to adequately explain why a 10% disability rating was appropriate for appellant's prostate cancer residuals, so we will remand that matter. And we will also remand the issue of appellant's entitlement to SMC, which both parties agree is inextricably intertwined with the proper rating of appellant's residuals.

Before we begin our analysis, we should consider the semantic difficulty that cuts across this appeal. The central issue we face is whether, when VA changes a claimant's disability rating for prostate cancer under DC 7528 from 100% to some lower rating, that change is a rating reduction entitling a claimant to the special regulatory procedures associated with such reductions (along with judicial interpretations of those regulations). The difficulty is that, of course, when VA changed appellant's disability rating from 100% to 10%, the change was a "reduction" in the colloquial sense. No one can argue otherwise. But, there is a certain awkwardness in explaining the matters at issue in this appeal because of the limitations of the written word. So, it is important to keep in mind that we are not dealing with the colloquial, common-sense meaning of "reduction." Rather, we are concerned with whether the common-sense "reduction" that occurred here was a "rating reduction," a legal concept in veteran's law that obligates VA to utilize the special procedures that apply to such actions. Therefore, though we may at times refer to what happened in this case as a "reduction," keep in mind that the precise issue is whether the action is a reduction in the legal sense, entitling appellant to special procedures. With this preliminary matter out of the way, we turn to the facts and then to the resolution of this appeal.

## I. FACTS AND PROCEDURAL HISTORY

In December 2013, appellant filed a claim seeking service connection for prostate cancer based on his exposure to Agent Orange while serving in Vietnam.[4] In September 2014, the regional office (RO) granted service connection for prostate cancer, assigning a 100% disability rating for

---

[4] R. at 1324-26.

active malignancy under DC 7528.[5] The RO also granted service connection for erectile dysfunction as a residual of prostate cancer, with a 0% disability rating, and awarded SMC based on housebound criteria and loss of use of a creative organ.[6] In the rating decision, the RO noted a "likelihood of improvement" and that the "assigned evaluation is not considered permanent and is subject to a future review examination."[7]

In October 2015, appellant underwent a VA review examination, which revealed that his prostate cancer was in remission and he had completed treatment.[8] That same month, the RO continued appellant's 100% disability rating for prostate cancer but again noted a "likelihood of improvement" and that the 100% rating is "not considered permanent and is subject to a future review examination."[9]

An October 2016 VA examination revealed that appellant had active cancer, that radiation therapy had been completed in 2014, and that androgen deprivation (hormonal) therapy (ADT) was current.[10] That same month, the RO continued the 100% rating for prostate cancer and again informed the veteran of "a likelihood of improvement" and that the 100% rating "is not considered permanent and is subject to a future review examination."[11]

In July 2017, appellant underwent another review examination that again noted his prostate cancer was in remission and that he had completed treatment in 2015.[12] Based on that examination, the RO proposed to discontinue appellant's 100% prostate cancer disability rating, assign a 10% disability rating based on appellant's voiding dysfunction, and end his SMC based on housebound status.[13] In an October 2018 rating decision, VA proceeded to implement the 10% rating and to end SMC, both effective in January 2019.[14] Appellant filed a Notice of Disagreement (NOD) in February 2019 and eventually perfected his appeal to the Board.

---

[5] R. at 902-16.

[6] *Id.*

[7] R. at 907.

[8] R. at 887-90.

[9] R. at 831.

[10] R. at 744-45.

[11] R. at 499-500.

[12] R. at 460-64.

[13] R. at 428-42.

[14] R. at 402-27.

In the September 2019 decision on appeal, the Board noted that pursuant to this Court's decision in *Rossiello v. Principi*,[15] DC 7528 contains a "temporal element for continuance of a 100[%] rating for prostate cancer residuals," and "the action was not a 'rating reduction' as that term is commonly understood."[16] Instead, the Board found the end of the 100% rating was "procedural in nature and by operation of law."[17] The Board found that the RO had properly carried out the due process requirements pursuant to 38 C.F.R. § 3.105(e).[18] The Board also found "no evidentiary basis for continuance of the 100[%] rating for prostate cancer under DC 7528 after January 1, 2019."[19] The Board noted that appellant was no longer receiving surgical, x-ray, antineoplastic chemotherapy, or other therapeutic procedures for prostate cancer, as required for a 100% rating.[20] Additionally, the Board found "no evidence of metastatic disease" and that appellant's cancer was in remission.[21] Thus, the Board concluded that the 100% rating had ended more than 6 months after the end of appellant's treatment and that the end of the rating was therefore proper under DC 7528. And, based on the end of appellant's 100% rating for prostate cancer, the Board found that appellant no longer met the requirements for SMC based on housebound status because he no longer had a single disability rated 100% disabling.[22]

The Board noted that appellant had filed an NOD "in response to the reduction," which "did not arise from a claim for an increased rating."[23] Thus, the Board concluded its "jurisdiction does not extend to deciding whether an increased rating is warranted for prostate cancer."[24] The Board went on, though, to address whether appellant "is properly rated at 10[%]."[25] It determined that 10% was proper based on voiding dysfunction, but that appellant was not entitled to a higher

---

[15] 3 Vet.App. 430 (1992).

[16] R. at 6.

[17] R. at 6-7.

[18] R. at 7.

[19] R. at 8.

[20] *Id.*

[21] *Id.*

[22] R. at 11.

[23] R. at 6.

[24] *Id.*

[25] R. at 8.

rating because his reports of using absorbent materials were not credible.[26] The Board's credibility finding was based on what it considered to be inconsistent statements about the use of absorbent materials.[27] This appeal ensued.

## II. PARTIES' ARGUMENTS

Central to most of the parties' arguments is a note accompanying DC 7528, which provides as follows:

> Following the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure, the rating of 100[%] shall continue with a mandatory VA examination at the expiration of six months. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e) of this chapter. If there has been no local reoccurrence or metastasis, rate on residuals as voiding dysfunction or renal dysfunction, whichever is predominant.[28]

Section 3.105(e), referred to in this note, requires that specific notice be afforded to a claimant when a rating reduction or discontinuance occurs.[29]

Appellant argues the Board erred in finding that DC 7528 contains a "temporal element" for continuance of a 100% rating and was, therefore, not a rating reduction. He contends that the Board improperly relied on *Rossiello* in this regard because the note to DC 7528 requires notice under § 3.105(e), which was not a part of the DC at issue in *Rossiello*. Appellant further argues that DC 7528 also differs from the DC at issue in *Rossiello*, because DC 7528 requires a claimant to undergo a mandatory examination 6 months after treatment ends but does not require a rating reduction at that time.

Appellant asserts that he was prejudiced by this purported Board error because had the Board classified the end of his 100% rating for prostate cancer as a rating reduction, he would have had the benefit of the VA regulations governing reductions, in particular 38 C.F.R. § 3.343(a), which requires a showing of material improvement under the ordinary conditions of life for a reduction to be proper.[30] He argues that, under those regulations, the Board erred by relying on the

---

[26] R. at 10.

[27] *Id.*

[28] 38 C.F.R. § 4.115b, DC 7528 (2021).

[29] 38 C.F.R. § 3.105(e) (2021).

[30] In his briefs, appellant also argued that § 3.344 applied to his situation. However, at oral argument, he conceded that provision would not apply under any circumstances because his 100% rating had not been in effect for 5 years.

July 2017 VA medical opinion because the opinion was less full and complete than the examination reports VA used to initially authorize the 100% disability rating. He contends that because the Board failed to comply with the rating-reduction regulations, the reduction is void ab initio and should be reversed.

The Secretary counters that the plain language of DC 7528 imposes 4 requirements for discontinuing a 100% disability rating: (1) A claimant's treatment has stopped, (2) VA has provided a mandatory 6-month examination, (3) VA has provided § 3.105(e) notice, and (4) if a claimant has no recurrence or metastasis of his prostate cancer, VA rates residuals as voiding or renal dysfunction.[31] The Secretary contends that VA satisfied these requirements and thus correctly discontinued the 100% disability rating. The Secretary also argues that the Board properly relied on *Rossiello* because DC 7528 contains temporal language similar to the language in the DC at issue in that case. He asserts that when the 100% prostate cancer rating "ceases to exist" the elements of DC 7528 are satisfied and can be distinguished from a rating reduction.[32]

Furthermore, the Secretary contends that § 3.105(e) operates independently of the rating-reduction regulations like § 3.343 and requires notice only as set out in the regulation. He argues that when VA added the § 3.105(e) notice provisions to the note to DC 7528, VA did not specifically reference the application of other rating-reduction provisions. He also notes the incompatibility of § 3.343 and the procedures set out in the note in DC 7528. The discontinuance of a 100% disability rating in DC 7528 is based on the length of time after cessation of treatment, while § 3.343 applies when a total rating is discontinued for reasons other than cessation of treatment. Thus, the operation of DC 7528 relies heavily on consideration of prostate cancer treatment, but § 3.343 precludes consideration of treatment and instead requires that a reduction in disability rating be based on the material improvement in a condition.

With respect to the 10% rating awarded for appellant's residuals of prostate cancer, the appellant argues that the Board failed to provide adequate reasons or bases for finding his statements about his voiding dysfunction requiring the use absorbent materials not credible.[33] The

---

*See* O.A. at 6:15-:26.

[31] Secretary's Brief (Br.) at 8.

[32] *Id.* at 11.

[33] In his opening brief, appellant argued that the Board did not have jurisdiction to address the propriety of his 10% rating. However, at oral argument, he withdrew that argument. *See* O.A. at 22:44-24:20. As we explain below, we independently conclude the Board had jurisdiction to address the propriety of the 10% disability rating for appellant's

Secretary agrees with appellant and concedes remand is warranted with respect to the propriety of the 10% rating for prostate cancer residuals.

The parties also agree that the issue of SMC is inextricably intertwined with the claim for prostate cancer residuals and should be remanded. According to the Secretary, it is "hypothetically possible" that appellant could receive a 100% rating for his prostate cancer residuals on remand, and thus the SMC claim is inextricably intertwined.[34]

## III. ANALYSIS

We will begin our analysis where all regulatory interpretation should begin, with the regulatory text, that is, with the text of DC 7528 and its accompanying note. We hold that for rating prostate cancer and its residuals, the plain language of DC 7528 and its note provides clear procedures, which include an endpoint for the 100% prostate cancer rating. Thus, the discontinuance of appellant's 100% rating does not constitute a rating reduction in the sense in which that phrase is normally used when VA proposes to reduce an established disability rating. Therefore, the regulations specifically governing rating reductions do not apply. Next, we will address appellant's other arguments related to the discontinuance of his 100% rating, as well as both the Secretary's and the Board's reliance on *Rossiello*. Then, we will turn to the propriety of appellant's 10% rating for residuals of prostate cancer. We accept the parties' concession of Board error in considering appellant's voiding dysfunction. Finally, we will consider appellant's entitlement to SMC, another matter that the parties agree should be remanded.

### *A. Discontinuance of 100% Rating for Prostate Cancer*

#### 1. Plain Language of DC 7528

Under § 4.115b, DC 7528, a 100% disability rating is provided for "malignant neoplasms of the genitourinary system." As we mentioned earlier, a note to this regulation states

> Following the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure, the rating of 100[%] shall continue with a mandatory VA examination at the expiration of six months. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e) of this chapter. If there has been no local reoccurrence or metastasis, rate on residuals as voiding dysfunction or renal dysfunction, whichever is predominant.[35]

---

prostate cancer residuals.

[34] Secretary's Br. at 21.

[35] 38 C.F.R. § 4.115b, DC 7528.

Section 3.105(e), which is referenced in DC 7528's note, provides, inter alia, that notice and an opportunity to present additional evidence will be provided "[w]here the reduction in evaluation of a service connected disability . . . is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made."[36]

Although we may not review the content of the rating schedule,[37] the Court has jurisdiction to interpret "the language in the regulations" related to or contained in the rating schedule.[38] We review the purely legal question of the proper interpretation of regulations, including DCs, de novo.[39] To determine the meaning of a regulation, we look first to "the language of the regulation, the plain meaning of which is derived from its text and structure."[40] If the plain meaning of the regulation is clear from its language, then the plain meaning controls, and "that is 'the end of the matter.'"[41] When we assess the meaning of a regulation, we should not read its words in isolation, but rather in the context of the regulatory scheme and structure as a whole.[42]

Regulations are often dense and difficult to follow. But that is not the case here. The plain language of DC 7528 provides step-by-step instructions for how prostate cancer and its residuals are to be rated. A 100% rating is warranted for malignant neoplasms of the genitourinary system. When a claimant's treatment ends, VA is required to provide an examination 6 months later to assess his condition. Based on the results of that examination, VA will either (1) continue the 100% rating if there is local reoccurrence or metastasis of the prostate cancer, or (2) provide the claimant with notice of the discontinuance of the 100% prostate cancer rating, consistent with § 3.105(e).[43] Once this notice has been provided, and based on the results of the mandatory examination, the

---

[36] 38 C.F.R. § 3.105(e) (2021).

[37] 38 U.S.C. § 7252(b); *see Wanner v. Principi*, 370 F.3d 1124, 1131 (Fed. Cir. 2004); *Marcelino v. Shulkin*, 29 Vet.App. 155, 157-58 (2018).

[38] *Smith v. Nicholson*, 451 F.3d 1344, 1346-47 (Fed. Cir. 2006); *see Wingard v. McDonald*, 779 F.3d 1357 (Fed. Cir. 2015); *Martinez-Bodon v. Wilkie*, 32 Vet.App. 393, 399, 402-04 (2020).

[39] *Martinez-Bodon*, 32 Vet.App. at 399-400.

[40] *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015); *see Good Samaritan Hosp. v. Shalala*, 508 U.S. 402 (1993); *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

[41] *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)); *see also Kisor v. Wilkie*, __ U.S. __, __, 139 S. Ct. 2400, 2415 (2019).

[42] *King v. Shinseki*, 26 Vet.App. 484, 488 (2014).

[43] Appellant does not challenge whether the notice VA provided of the discontinuance of his 100% disability rating was consistent with § 3.105(e). Thus, he has abandoned any appeal of this argument. *See Pederson v. McDonald*, 27 Vet.App. 276-281-86 (2015) (en banc).

100% rating ends, and the claimant's condition will be rated based on prostate cancer residuals, that is, based on any voiding or renal dysfunction he may have, whichever is predominant.

It is clear from the language of DC 7528 that the discontinuance of appellant's 100% disability rating does not constitute a traditional rating reduction but is instead part of the initial rating assigned for the condition. The note to DC 7528 sets forth, in some sense, a rating package that describes when a 100% disability rating will be assigned, the circumstances under which that rating may be discontinued based on procedures set out in the note, and assuming there is an end to the 100% disability rating, how residuals will be rated thereafter.

When DC 7528 is considered within its regulatory structure, it becomes even more apparent that the discontinuance of a 100% rating under DC 7528 is not a rating reduction. A proper rating reduction under the language of 38 C.F.R. § 3.343, for example, requires a showing of material improvement under the ordinary conditions of life. However, DC 7528 provides its own measure of improvement for prostate cancer, specifically, cessation of treatment and no cancer recurrence or metastasis based on a mandatory examination. Thus, to read the reduction provisions into DC 7528, as appellant argues, would render portions of the regulations redundant and require the Board to consider improvement of prostate cancer under two different standards. Courts should read a regulation in a way "'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.'"[44] To read the rating-reduction regulations into the language of DC 7528 would make the method for measuring improvement under the DC inoperative or less significant and thus should be avoided.

In sum, and to repeat, the plain language of DC 7528 provides when a 100% disability rating is appropriate, what must occur before that rating is discontinued, and how VA is to rate a claimant's prostate cancer residuals when the 100% prostate cancer rating is no longer warranted under the DC. The discontinuance of a 100% rating for prostate cancer under DC 7528 does not constitute a rating reduction because the plain language of the DC governs how the 100% rating is to be treated, including when it will no longer apply. After an examination provided 6 months after treatment has ended finds no local recurrence or metastasis, the claimant is entitled to

---

[44] *Roper v. Nicholson*, 20 Vet.App. 173, 178 (quoting 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46:06 (6th ed. 2000)), *aff'd*, 24 F. App'x 422 (Fed. Cir. 2007); *see also Jenson v. Shulkin*, 29 Vet.App. 66, 74 (2017).

disability ratings for any voiding or renal dysfunction he may have as a residual of prostate cancer, but not the 100% prostate cancer rating.

Before we turn to applying the plain language of DC 7528 to the facts of this case, we pause to address two key aspects of the parties' arguments: The rating-reduction regulatory provisions appellant suggests apply here and the proper way to read *Rossiello*. First, we note that appellant has not been entirely precise in identifying the regulatory provisions he believes the Board was required to apply if the change in his 100% disability rating was a traditional rating reduction. In his opening brief, appellant listed a series of regulations that he seemed to suggest were implicated by his argument that VA action here was a rating reduction: 38 C.F.R. §§ 3.343, 3.344, 4.1, 4.2, 4.10, and 4.13.[45] Certainly, §§ 3.343 and 3.344 apply directly to rating reductions (although, as noted above, appellant agrees that § 3.344, concerning the stabilization of ratings after 5 years, would not apply to his situation even if what occurred here was a rating reduction). However, the other regulations to which appellant refers are not limited to rating reductions. As we explain below, it may be that *how* these generally applicable regulations operate is affected by whether an action is a rating reduction. But unlike regulatory provisions specifically focused on rating reductions, these more generally applicable provisions apply regardless of whether what occurred here is a rating reduction.

Second, as noted above, both the Board and the parties spend a significant amount of time discussing the Court's decision in *Rossiello*. Although the plain language of the DC controls our resolution of this matter, our holding is nevertheless consistent with the *Rossiello* Court's approach.

In *Rossiello*, the Court addressed DC 6819, which governs respiratory cancers.[46] DC 6819 contained a note similar to the note at issue in this matter but without an examination requirement or a reference to § 3.105(e).[47] The question at issue in that case was generically the same as the one before us now: whether the cessation of a 100% cancer rating under DC 6819 constituted a

---

[45] *See* Appellant's Br. at 12-13.

[46] 3 Vet.App. 430.

[47] *Id.* The note at issue in *Rossiello* stated the following: "The rating under [DC] 6819 will be continued for 2 years following the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure. At this point, if there has been no local recurrence or metastases, the rating will be made on residuals." 38 C.F.R. § 4.97, DC 6819 (1991). The Court notes that although the DC at that time did not contain an examination requirement or refer to § 3.105(e), in *Rossiello* the veteran's 100% rating continued beyond the 2-year period because he had received inadequate notice about the discontinuance, and remand would permit a proper examination of his condition. 3 Vet.App. at 432-33.

rating reduction? The Court held the cessation of the 100% rating was not a rating reduction. Relying on what it termed a "temporal component," specifically the 2-year period following the end of treatment before reassessment, the Court held that the appellant's 100% rating "ceased to exist by operation of the note."[48] The Court noted that although "the net effect of DC 6819 may be a lower percentage rating after two years, it is not a reduction in the rating for a singular condition; rather it is the result of an award of separate successive ratings for different conditions."[49]

Thus, *Rosiello* did what we do today–interpret the language of a note to a DC. And *Rosiello*'s reference to a "temporal component" in the DC at issue there[50] is an apt description for DC 7528, which also contains a temporal component–a mandatory examination conducted 6 months after treatment ends, plus the notice period required by § 3.105(e). VA must apply these time periods and a court must consider them when addressing neoplasm DCs.

Similarly, *Rossiello*'s statement that the 100% respiratory cancer rating "ceased to exist by operation of the note"[51] means that the Court interpreted the note there to provide a mechanism by which a rating is reduced under DC 6819. We do exactly the same thing today with the note to DC 7528. But saying something happens by operation of law is not quite as dramatic as the parties make it out to be in application. After all, every time a court states what a regulation means, a court establishes what the law requires in operation. That is not remarkable; it is what courts do. In short, our decision today and the Court's *Rossiello* decision rest comfortably together. Both interpret a neoplasm DC that provides a mechanism to address how a rating will be assessed.

Moreover, our decision today (and in *Rossiello,* for that matter) is entirely consistent with every decision that has considered DC 7528 and other DCs accompanied by notes similar to the note accompanying DC 7528. For example, in *Tatum v. Shinseki*, this Court held that the notice requirements of DC 7528 did not apply to retroactively awarded staged ratings, but only to "a reduction or discontinuance of compensation payments currently being made."[52] In its decision, the Court explained the operation of DC 7528 much as we do today, engaging in the same type of regulatory interpretation as we do today, but addressing a question different than the one before

---

[48] *Rossiello*, 3 Vet.App. at 433.

[49] *Id.* at 432.

[50] *Id.* at 432-33.

[51] *Id.* at 433.

[52] 24 Vet.App. 139, 142 (2010).

us.[53] The Court noted the use of the words "shall" and "mandatory" in DC 7528 "removed from the decisionmaker the discretion to reduce or otherwise change a 100% rating during the [6]-month period following treatment for malignant neoplasms, and until a medical examination report supports such a change."[54] With respect to § 3.105(e), the Court held that DC 7528 clearly predicates a reduction on compliance with its notice provisions, which are mandatory, when a rating has already been assigned and VA will discontinue the rating.[55] And that too is consistent with what we hold.

More recently, our Court addressed DC 7528 in *Bailey v. Wilkie*, holding that DC 7528 provides a single evaluation for residuals of prostate cancer, based only on voiding or renal dysfunction, whichever is predominant, and does not include other residuals, which must be evaluated separately.[56] The Court held that "the conditional sentence at the end of the Note to DC 7528 is clear and unambiguous" in presenting only two evaluation options.[57]

Thus, consistent with *Tatum and Bailey*, we rely on the plain language meaning of DC 7528 in holding that its language mandates certain requirements (§ 3.105(e) notice and a VA examination) before a 100% disability rating for prostate cancer can be discontinued and a rating based on voiding or renal dysfunction residuals can be assigned. We add to this caselaw to hold that the discontinuance is not a traditional rating reduction but is a component of the rating package by which the initial 100% prostate cancer rating is assigned. As in *Tatum* and *Bailey*, "the meaning and scope of DC 7528 is clear from its text and structure" on this point as well.[58]

Finally, in *Breland v. Wilkie*, this Court recently addressed DC 7343, which governs tongue cancer ratings and includes a note similar to the note accompanying DC 7528.[59] The Court held that the note did not apply retroactively such that a 100% rating continued until an examination was conducted long after the 6-month period passed.[60] As we have done today, the *Breland* Court

---

[53] *Id.* at 142.

[54] *Id.*

[55] *Id.* at 144.

[56] 33 Vet.App. 188, 191 (2021).

[57] *Id.* at 195.

[58] *Id.* at 196.

[59] *Breland v. Wilkie*, 32 Vet.App. 360 (2020).

[60] *Id.* at 362.

based its interpretation on the plain language of the DC. The Court explained the operation of the DC as follows:

> Thus, we read DC 7343 to require the following when the rating is retroactively awarded: (1) VA may assign a noncompensable rating for malignant neoplasms when the cancer is inactive and treatment has ceased (i.e., the veteran remains service connected for that cancer)—this noncompensable period for cancer itself will often coincide with the rating period for cancer residuals; (2) these retrospective discrete ratings are staged ratings; and (3) notice and a VA examination 6 months after cessation of treatment is only required where current compensation would be reduced, which is not what occurs when assigning a retroactive staged rating.[61]

While *Breland* addressed the application of § 3.343(a), the Court held that § 3.343(a) did not apply to DC 7343 because *Breland* involved a retroactive award of benefits, which precluded the application of § 3.343(a). Thus, the Court did not directly speak to the question before us now.

Again, our decision today is consistent with the holding in *Breland* because in both matters the operation of the DCs dictate the action to be taken and the length of time the 100% rating remains in place subject to actions VA must undertake. Appellant argues that his case differs from *Breland*, given the different language of the notes accompanying the DCs.[62] He contends that though DC 7343 at issue in *Breland* requires a mandatory discontinuance of benefits after a certain amount of time passes, DC 7528–at issue here–requires only a mandatory examination and does not require VA to determine the appropriate rating at that time. However, this is a distinction without a difference. For prospective cases, to determine whether a 100% cancer rating continues because the cancer has recurred or metastasized, both DCs require a VA examination 6 months after treatment ends, and if the cancer has not recurred or metastasized, both DCs require VA to obtain information to rate residuals.[63]

And this is consistent with VA's purpose for amending the notes accompanying the DCs to add the examination and § 3.105(e) requirements, which was so the cancer ratings would reflect actual medical findings and veterans would have more contemporaneous notice of any proposed

---

[61] *Id.* at 369.

[62] DC 7343 provides, in part "[s]ix months after discontinuance of such treatment, the appropriate disability rating shall be determined by mandatory VA examination. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e)." 38 C.F.R. § 4.114, DC 7343.

[63] *See Breland*, 32 Vet.App. at 366.

action.[64] Thus, our holding follows logically from the reasoning in *Breland*, and the history of the DCs makes clear why they would be similarly read. The 100% rating for prostate cancer under DC 7528 ends within a time period laid out in the DC–specifically, the rating ends when an examination is conducted at least 6 months after treatment has ended and once a claimant is provided with notice according to § 3.105(e). If there is no local recurrence or metastasis, the prostate cancer rating decreases to 0% and a claimant is provided a rating for either voiding or renal dysfunction.

In sum, our holding today builds on the precedential caselaw before it. The common thread that links this caselaw is the plain language of the DCs at issue in those cases. And an adjudicator should simply apply the DC's procedures, including any temporal components that may be present, as written. Here, the note accompanying DC 7528 is clear. The discontinuance of a 100% prostate cancer rating following the procedures set out in that note is not a rating reduction requiring VA to follow the special procedures associated with rating reductions.

## 2. Application to the Facts

Having established that the discontinuance of a 100% disability rating for prostate cancer under DC 7528 does not constitute a rating reduction, we easily conclude that the Board did not err in the portion of its decision concerning that issue. Appellant argues that the Board should have considered whether the July 2017 VA examination complied with general rating-reduction provisions in § 3.343. However, because this case does not involve a rating reduction in the sense that regulation addresses, the Board was not required to apply it.

At oral argument and in his briefing,[65] appellant specifically raises the application of 38 C.F.R. § 4.1, which provides in part that "[i]t is essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history."[66] He argues that regardless of whether the discontinuance of his 100% disability rating under DC 7528 constitutes a rating reduction, he is still entitled to an adequate VA examination under the general regulatory requirements. He cites *Brown v. Brown*, which found that § 4.1, in addition to §§ 4.2 and 4.13,

---

[64] *See* 59 Fed. Reg. 2523, 2525-26 (1994) (amending the note accompanying DC 7528); 65 Fed. Reg. 48,205, 48,206 (2000) (providing that the change to the note accompanying DC 7343 would provide criteria similar to those used under other DCs, including DC 7528).

[65] O.A. at 6:35-8:00; *see also* Appellant's Br. at 12-13.

[66] 38 C.F.R. § 4.1 (2021).

apply to rating reduction cases, "as with all VA rating decisions."[67] Thus, appellant argues that the Board was required to provide an adequate examination, no matter how the discontinuance of his 100% rating is classified.

Appellant's argument as to these general regulatory provisions is a bit of a red herring. The Court wholeheartedly agrees that when VA provides a medical examination, it must make sure that examination is adequate.[68] That is always the case. However, the standard for what constitutes an adequate examination changes in some respect depending on the type of claim at issue. Stated another way, to be adequate, an examination must answer the question before the Board, whether that is the question of what disability rating to assign, whether service connection can be established, or whether a reduction is proper. Here, appellant argues that the proper question is whether the July 2017 VA examination is adequate to address a rating reduction. This question brings in § 3.343 and other rating-reduction regulations. But as we have established, that is not the correct question because there is no rating reduction at issue in this case.

Rather, the right question is whether the July 2017 VA examination is adequate for the Board to determine whether discontinuance of the 100% prostate cancer rating was proper under DC 7528. Appellant's main argument about the examination is made in the context of a rating reduction, which, again, is not at issue here.[69]

To the extent appellant challenges the adequacy of the July 2017 examination to support the discontinuance of his 100% prostate cancer rating, we can discern no prejudice. Specifically, the parties debate when appellant's ADT ended and whether VA acted prematurely in July 2017 in proposing to discontinue his 100% prostate cancer rating. Appellant contends that the July 2017 VA examiner failed to consider the October 2016 examination's notation of current hormonal therapy, which means that the July 2017 examiner's finding that cancer treatment ended in 2015 was inadequate.[70] The Secretary counters that there is no evidence of hormonal therapy taking

---

[67] *Brown v. Brown*, 5 Vet.App. 413, 420 (1993).

[68] *Barr v. Nicholson*, 21 Vet.App. 303, 311 (2007).

[69] Similar reasoning applies to the other, generally applicable, regulations appellant cites: 38 C.F.R. §§ 4.2, 4.10, and 4.13. These regulations apply regardless of whether what occurred here was a rating reduction. And appellant makes no argument—at least one that is not dependent on the discontinuance of his 100% disability rating constituting a rating reduction—that VA did not apply those provisions correctly.

[70] R. at 745.

place after September 2016, which still contradicts the July 2017 examiner's finding that treatment ended in 2015.

The question of when appellant's treatment ended is important because DC 7528 requires that an examination, here the July 2017 examination, be scheduled 6 months after the end of treatment. Appellant's treatment records show that his ADT is a 6-month treatment and that he underwent his last round of ADT in September 2016.[71] This means that his last round of ADT in September 2016 lasted for 6 months, ending in March 2017. According to DC 7528, VA was required to provide him an examination 6 months after the cessation of treatment, which would have been in September 2017. However, VA provided this examination in July 2017–2 months earlier than the DC requires.

Although there appears to be some questions about the end of appellant's ADT and the July 2017 VA examiner's conclusions about the end of treatment, appellant still bears the burden to show prejudice here.[72] He fails to carry that burden because VA did not discontinue appellant's 100% prostate cancer rating until January 2019, far beyond 6 months after any of the dates the parties propose as his last day of treatment. Therefore, we conclude that any error in this regard was harmless.

To summarize, appellant's arguments related to the discontinuance of his 100% disability rating under DC 7528 all turn on establishing that that discontinuance constitutes a rating reduction. Because we hold that it does not, appellant's other arguments must fail. Therefore, we find no basis to reverse the Board's decision as void ab initio. To the extent that he challenges the date of that discontinuance, he fails to demonstrate prejudice in the Board's reliance on the July 2017 VA examination. Therefore, we will affirm the Board's finding that the discontinuance of a 100% rating for prostate cancer was proper under the plain language of DC 7528 and its accompanying note.

### B. 10% Disability Rating for Prostate Cancer Residuals

As noted above, appellant initially argued that the Board did not have jurisdiction to consider the propriety of his 10% disability rating for residuals of prostate cancer. However, at

---

[71] R. at 518, 245 (showing ADT in September 2016 but not in March 2017 due to suicidal ideation).

[72] *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999), *aff'd*, 232 F.3d 908 (Fed. Cir. 2000).

oral argument, he withdrew this argument.[73] Nevertheless, the Court has "an independent obligation to ensure it has jurisdiction to act."[74] We conclude that the propriety of the 10% disability rating for residuals was properly before the Board. As we explained above, DC 7528 and its accompanying note establish a procedure that sets a 100% prostate cancer rating, describes how that rating will be reevaluated 6 months after treatment ends, and, should the required medical examination establish that the 100% prostate cancer rating is no longer warranted, how VA is to rate any residuals. So, the Board had jurisdiction to assess all aspects of this rating process, including the assignment of a disability rating for appellant's residuals. In sum, we agree with the parties that the issue of the propriety of the 10% disability rating was before the Board and, therefore, is appropriately before us.

With jurisdiction established, we turn to the propriety of the 10% disability rating for appellant's prostate cancer residuals. Appellant was assigned a 10% disability rating pursuant to 38 C.F.R. § 4.115a, which provides for varying degrees of voiding dysfunction including urinary incontinence and frequency.[75] A 10% rating is warranted for daytime voiding interval between 2 and 3 hours or awakening to void 2 times per night.[76] A 20% rating is warranted for daytime voiding interval between 1 and 2 hours or awakening to void 3 to 4 times per night.[77] A 40% rating is warranted for daytime voiding interval less than 1 hour or awakening to void 5 or more times per night.[78] Additionally, with respect to urinary incontinence, a 20% rating is required for the wearing of absorbent materials that must be changed less than 2 times per day; a 40% rating is warranted for changing absorbent materials 2 to 4 times per day; and a 60% rating is warranted if the claimant requires the use of an appliance or changes absorbent material more than 4 times per day.[79]

---

[73] *See* O.A. at 22:44-24:20.

[74] *Demery v. Wilkie*, 30 Vet.App. 430, 434 (2019) (per curiam order); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

[75] Appellant does not challenge the use of voiding, as opposed to renal, dysfunction as the basis to assign a rating for residuals of prostate cancer in his case.

[76] 38 C.F.R. § 4.115a (2021).

[77] *Id.*

[78] *Id.*

[79] *Id.*

Here, the Board noted appellant's statements that he used absorbent materials, but the Board found these statements not credible because they were supposedly inconsistent with the July 2017 VA examination report and VA treatment records that did not show incontinence.[80] Instead, the Board found appellant had urinary frequency commensurate with a 10% rating.[81]

Appellant argues, and the Secretary agrees, that the Board failed to explain why it found appellant's statements that his voiding dysfunction required the use of absorbent materials not credible. The parties agree that the Board's finding that there was no record of incontinence is inaccurate, because various treatment records indicate that appellant had incontinence.[82] Thus, the Board based its credibility finding on an inaccurate description of the evidence of record.

The Court agrees with the parties and accepts the Secretary's concession of error with respect to the Board's credibility finding. On remand, the Board must discuss the evidence of incontinence in conjunction with appellant's statements about his use of absorbent materials.[83]

Because the Court is remanding this matter to the Board for readjudication, we need not address any remaining arguments and issues raised by appellant, and appellant can present them to the Board.[84] On remand, appellant may submit additional evidence and argument and has 90 days to do so from the date of VA's postremand notice.[85] The Board must consider any such additional evidence or argument submitted.[86] The Board must also proceed expeditiously.[87]

### C. Entitlement to SMC

In his brief, the Secretary asserts that it is "hypothetically possible" appellant could receive a 100% disability rating for his prostate cancer residuals on remand, warranting the reinstatement

---

[80] R. at 10.

[81] R. at 9.

[82] *See* R. at 153 (Aug. 2018 record noting medication for bladder spasms), 245 (Jan. 2018 record noting incontinence), and 335 (May 2017 record noting urinary incontinence in last 24 months).

[83] *See Caluza v. Brown*, 7 Vet.App.498, 506 (1995) (holding that the Board must analyze the credibility and proactive value of the material evidence, account for the evidence it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

[84] *See Best v. Principi*, 15 Vet.App. 18, 20 (2001).

[85] *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see also Clark v. O'Rourke*, 30 Vet.App. 92 (2018).

[86] *Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

[87] 38 U.S.C. §§ 5109B, 7112.

of SMC.[88] As we have explained, "where a decision on one issue would have a 'significant impact' upon another and that impact in turn 'could render any review by this Court of the issue [on the other claim] meaningless and a waste of judicial resources' the two claims are inextricably intertwined."[89] Given the Secretary's position and the potential impact of the Board's decision on rating appellant's prostate cancer residuals on remand, we will remand the SMC issue as well. Appellant's rights on remand as to SMC are the same as those that apply to the readjudication of his 10% disability rating as discussed above.

## IV. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the Court AFFIRMS that part of the September 5, 2019, Board decision that found the discontinuance of a 100% disability rating for prostate cancer proper. We SET ASIDE the Board's decision as to the propriety of the 10% disability rating for residuals of prostate cancer and entitlement to SMC and REMAND those matters for further proceedings consistent with this decision.

---

[88] Secretary's Br. at 21.

[89] *Henderson v. West*, 12 Vet.App. 11, 20 (1998) (quoting *Harris v. Derwinski*, 1 Vet.App. 180, 1873 (1991)); *see also Parseeya-Picchione v. McDonald*, 28 Vet.App. 171, 177 (2016).